JOHN D. STEELMAN ET AL., PLAINTIFFS IN ERROR, v. ATLANTIC CITY SEWERAGE COMPANY, DEFENDANT IN ERROR.

In a deed of conveyance the description is: "Second tract being an undivided third part of all the salt marsh belonging to the said party of the first part situate, lying and being north of the fourth line of the aforesaid three hundred and forty-seven acres and extending to the thoroughfare." *Held*, that all that follows the word "marsh" refers to the marsh as a whole and not to the part conveyed by way of limitation.

On error to the Supreme Court.

For the plaintiffs in error, *Mark R. Sooy.*

For the defendant in error, *David J. Pancoast* and *Clarence L. Cole.*

The opinion of the court was delivered by

GARRISON, J. This is an action of ejectment. The plaintiffs and the defendant each claim title to the *locus in quo* from Andrew Leeds—the plaintiffs under the residuary devise contained in his will, the defendant through mesne conveyances made by Andrew Leeds ·in his lifetime. If these conveyances include the *locus* the judgment rendered for the defendant should be affirmed; if they do not the judgment must be reversed. The sole question is one of construction of three deeds made by Andrew Leeds to his three sons, which are now gathered up in the defendant's title. These deeds bear the same date, viz., March 31st, 1849. At that date Andrew Leeds was seized in fee-simple of two tracts of land in Atlantic county, one a tract of beach land set off to him by metes and bounds in the division of the real estate of his father, Jeremiah, containing three hundred and forty-seven acres, the other a tract of marsh contiguous in part to the first tract. By the three deeds above mentioned Andrew

divided the beach land among his sons, James, Steelman and John, conveying to each a portion in severalty. In each of these deeds a second tract of land is conveyed, which, in the deeds to James and John, is thus described:

"Second tract being an undivided third part of all the salt marsh belonging to the said party of the first part situate, lying and being north of the fourth line of the aforesaid three hundred and forty-seven acres and extending to the thoroughfare."

And in the deed to Steelman is described as follows:

"The second being the undivided one-third part of all the salt marshes belonging to said party of the first part situate, lying and being north of the aforesaid three hundred and forty-seven acres and north of the fourth line thereof and extending to the thoroughfare."

It will be observed that in each of these descriptions mention is made of the fourth line of the original division by which Andrew took his title, and as the *locus in quo* is not included within perpendiculars dropped directly from the north to the ends of this line, the plaintiffs contend that it was not conveyed by these descriptions. This contention is the whole case. The question thus presented is whether, by these three descriptions, the grantor conveyed all his marsh in undivided thirds or whether he conveyed to each grantee all of the undivided third of so much of the marsh as lay between the thoroughfare on the north and the fourth line of the division on the south. And this, in turn, depends upon whether the expression "situate, lying and being north," &c., "and extending to the thoroughfare" was used as descriptive of the location of "the salt marsh belonging to the party of the first part" or whether it was employed to limit the conveyance to so much of the marsh as had the said fourth line for its southerly boundary.

If the mind halt between these two constructions, deeming each to be of equal weight, judgment must be for the defendant, not only because the burden of proof is upon his adver-

sary, but also because of the maxim *verba chartarum fortius accipiuntur contra proferentem.*

The contentions do not, however, seem to me to rest in equipoise. On the contrary, I find in the deed to Steelman Leeds a clear assertion that the north line of the division was not the boundary of the land conveyed. By the citations given above it will be observed that the language in the deed to Steelman differs in two particulars from that used in the deeds to James and John—first, in that it speaks of "marshes" in the plural, and second, that it speaks of these marshes as situate, lying and being north not of the fourth line of the three hundred and forty-seven acres, but of "the aforesaid three hundred and forty-seven acres and north of the fourth line thereof." Now, as the first course of the description to which reference is thus made runs south twenty-five and three-quarters degrees east, and its third course is parallel thereto, running north twenty-five and three-quarters degrees west seventy-nine chains and sixty links, it is evident that the southeast corner of the tract extends to the east of its fourth course by the length of the base of a right-angled triangle having an hypothenuse of seventy-nine chains and sixty links, leaving the plane of the perpendicular at an angle of twenty-five and three-quarters degrees—a distance, when reduced to feet, of two thousand two hundred and eighty-one and twenty-eight hundredths feet, or nearly half a mile, whereas the fourth line is barely a quarter of a mile in length. As this is undoubtedly the effect of the description by which Steelman Leeds took his undivided third, the contention of the plaintiffs would lead to a result by which one of the sons would be a tenant in common with his brothers as to a narrow strip of the marsh, a tenant in common with his father as to a much wider strip, while the greater part would remain in the grantor, although he had qualified his grant by the word "all" and spoken of his marshes in the plural. It is not pretended that the deeds were given to effectuate so absurd a division. It is, on the contrary, entirely consonant with reason and with sound construction to take the words of the deeds as referring

to the location of the marsh as a whole and not to the part conveyed by way of limitation. ·This is the natural sense of the words—as if the conveyance had been of land lying north of the manor-house or of a stone corner to other land—in which case it would not be seriously contended that all that passed was a strip of land of the width of the house or of the stone.

The expression "and extending to the thoroughfare," which occurs in each of the deeds, concords with this view. The context deals with land not with mathematical lines, hence the natural synonym for "extending" is "reaching" or "stretching," and not "produced" or "protracted." This construction is, moreover, the only one that fairly harmonizes with the topography. This was the construction given to these instruments by the court below, and is the only question raised in the bill of exceptions.

The judgment of the Supreme Court is affirmed.

*For affirmance*—THE CHIEF JUSTICE, COLLINS, DEPUE, DIXON, GARRISON, GUMMERE, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON. 11.

*For reversal*—None.