## OBERON LAND COMPANY

### v.

### MARY DUNN et al.

[Filed April 27th, 1898.]

1. To enable the complainant to file a bill under the act authorizing suits to quiet title, &c. (*Gen. Stat. p. 3486*), the complainant must be in peaceable possession of the land in question.

2. All acts which would naturally convey to an onlooker the sense that the party doing them was an owner are evidential of such a possession as the statute requires.

3. Such acts vary according to the character of the land in question. Acts of improvement and development, requiring large expenditure on the land and taking nothing off, and indicating future use of the land itself for sale, such as laying out in streets, grading the tract, constructing, curbing and paving for streets, protecting the whole tract from erosion by the ocean, mapping and recording maps, dedicating streets and making conveyances with relation thereto, are such as would be done by an owner and are acts of possession.

4. The supplement to the act authorizing suits to quiet title, &c., passed in 1891 (*Gen. Stat. p. 3488*), enables a party who has mapped lands into lots and filed his map and dedicated streets and sold lots, to file a bill to quiet title not only to the lots retained, but also to the lots sold, and makes the possession of the grantee of the lots sold the possession of the complainant for the purposes of that suit.

On bill to quiet title, answer and proofs.

This bill is filed under the statute authorizing suits to quiet title. *Gen. Stat. p. 3486.* The complainant sets up a chain of title, starting from a partition sale of the lands in question (they being parcel No. 31) in 1854 by commissioners, under the order of the orphans court of Atlantic county, and claims to own the entirety of the property, which consists of a tract of beach lands, adjoining the seaside town of Longport, containing about seventy-seven acres. The complainant acquired the property in 1881 by deed from one Charles Barton, and alleges that after

getting that deed, it mapped the tract into town lots, constructed streets, since used as public highways, erected a wharf for the use of the public, sold lots to purchasers, who have constructed buildings thereon, and that great improvements have been made upon the premises. The complainant further avers that it has been in actual and peaceable possession of the whole plot (excepting the lots sold) ever since its purchase from Barton, in 1881, and that the defendants have lately claimed to be the owners of the undivided interests in the premises, and by their assertions of title are injuring the complainant's enjoyment of its property and hindering the sale of lots. The complainant asks that its title may be established by a decree and the claims of the defendants declared to be void.

The defendants file answers to the bill and admit the partition sale, but state that, at the time of that sale, the heirs of one Adam Somers, under whom they claim, were tenants in common of the premises described in the bill, with other parties, and allege that the Somers heirs were not made parties in that suit. They deny the title of the complainant, save as tenant in common with them, deny that it made the improvements named, and that the complainant or those under whom it claims, have occupied the premises described in the bill. They admit that no suit is pending to test the validity of their claims. They claim that they " severally own and control and claim interest in " a tract of land which they describe in their answer, and which is stated in defendants' brief to contain thirty-seven acres. They set out the claim of title thereto and the quantity of each individual defendant's interest, the total of their claims amounting to less than an undivided one forty-seventh part of the triangular plot described in the answer.

Before the hearing the defendants applied for an issue at law to try the validity of the claims of the parties, but still insisting that the complainant had no such possession of the premises as entitled it, under the statute, to file its bill in this cause. The hearing proceeded to ascertain whether the complainant had, in fact, such a possession of the tract in question that it could invoke the aid of this court under the statute to quiet titles.

*Mr. David J. Pancoast,* for the complainant.

*Mr. George A. Bourgeois,* for the defendants.

GREY, V. C.

The statute under which the complainant is proceeding in this court directs, that upon the application of either party, an issue at law shall be directed to try the validity of the claims set up by the litigants. *Gen. Stat. p. 3487.* Such an application has been made in behalf of the defendants, who insist that they also have a right to try in this court, as a preliminary issue, the question whether the complainant has such a peaceable possession of the premises in question as gives it standing to file its bill under the statute. The established practice of the court is to try this issue in this court before awarding an issue at law, because if it be found that the complainant has no such possession as is necessary to meet the statutory requirements, then it has no right to cast upon the defendants the burden of making primary proof of their title in a court of law. *Powell v. Mayo, 9 C. E. Gr. 178; Beale v. Blake, 18 Stew. Eq. 668.*

The possession required by the statute is a peaceable possession. It is not disputed that the acts done by the grantors of the complainant and by it, in the nature of assertions of possession, were peaceable. No claim is made of any violence, nor of any resistance, nor of any disputation of the action of the complainant company.

This peaceable possession must exist at the time of the filing of the bill, but the evidence of such a possession may be the action of the complainant, and of those under whom it claims, at any reasonable time preceding the beginning of the action of this court. Any acts regarding the premises which would naturally convey to an onlooker the sense that the party doing or directing them was the owner, are evidential of such a possession as the statute contemplates. These acts must necessarily vary greatly according to the character of the property in question. A house would not be dealt with as would a tract of woodland, nor a sand-beach property as would a farm.

The tract in question, as claimed by the complainant, is a piece of beach land containing seventy-seven acres, and was No. 31 in a partition sale of lands of Daniel Collins and others, made in 1854. It lies immediately next the village or town of Long-port, on the southwestern end of Absecon beach, and runs in a general easterly and westerly direction across that beach, from the Atlantic ocean to Beach thoroughfare, the north and south boundary lines being nearly parallel, and those on the east and west following the irregular high-water mark of the ocean and the thoroughfare respectively. It was used by the complainant for division into town lots with proper streets, as the location of a town or village.

The claim of the defendants, so far as it is defined by their testimony, applies to a triangular piece lying nearly in the middle of the tract claimed to be in possession of the complainant, its base being on the southwesterly end and its apex near the northeasterly end of that tract. In this triangle the defendants claim to hold fifty-eight undivided twenty-seven hundredths parts.

The complainant's grantor and also the complainant, treated the whole seventy-seven acres as one tract, and did the acts which are claimed to show possession indiscriminately over the whole property, making no distinction between the triangle claimed by defendants and the rest of the property. In all their acts they dealt with the tract as sole owners of the entirety, and no proof indicates any recognition of the claimed undivided interest of the defendants in the triangle. On the ground there was nothing in the nature of a monument or any natural or artificial boundary defining the extent or location of the inner triangular plot claimed by defendants. Nor was any evidence offered that the defendants had ever entered on the premises they claim, or had in any way taken possession or done any act on the triangular plot having the color of possessory right. Their whole assertion of interest seems to exist solely in the statements of surveys, re-surveys and deeds. No one going upon the land would find there anything to indicate the existence of the triangular plot as a separate ownership.

The complainant's proofs of acts of possession are substantially undisputed, and the only question to be determined is the sufficiency of those acts to meet the requirements of the statute, and amount to a peaceable possession. These acts began under the previous ownership of the complainant's grantor, one Charles Barton. Mr. Barton always dealt with the whole property described in the bill conveyed by him to the complainant, as an entire tract. He caused it to be surveyed and streets to be mapped and named on a plan, and staked out on the ground. These stakes were three or four feet high above the ground, and were four or five inches wide at the tops, which were painted white for a foot down from the top. They were driven into the land so that they marked out the whole of the tract designated as No. 31, and necessarily included the triangle claimed by the defendants. They were visible to anyone going on the tract. Mr. Barton also published a booklet showing his map of the property and inviting purchases of lots. These were generally and widely circulated. He also built a wharf at the northern corner of the tract on the thoroughfare, and made a path or road across that part of the tract to this wharf and for a time repaired the wharf. Mr. Barton also " brushed " the ocean front of the tract, that is, set brush along the edge of the ocean to prevent washing away of the land and to catch and accumulate the sand. This brush was four feet high and three or four wide, and extended along the ocean front. Mr. Barton sank a well for the use of the property. He built on the property two cars to carry sand, and a tramway for them to run on. This tramway was portable, and was used to shift sand from the higher to the lower places on the tract. It was nine hundred feet long, and was built from the railway track toward the thoroughfare. Two shovel plows were used to plow down the sand from the hills. From 1882 until he sold to the complainant, Mr. Barton had a man in general charge of the tract, who did part of the work above detailed, and nobody ever interfered with his management of the property.

On the purchase of the property by the complainant, in 1889, it made another map of the whole tract, and laid it out in lots

48

Oberon Land Co. *v.* Dunn.

and streets and filed its map in the clerk's office of Atlantic county, issued booklets and circulated them. It opened one of these streets—Twenty-fourth street—on the ground, all the way across the tract from the thoroughfare to the ocean, graded it from the railroad to the beach, and curbed it on both sides, and though not kept in constant repair, it has been cleaned off, and had the holes smoothed out, and is still in use as a street, and is an obvious improvement of the property. It crosses the base of the triangle in which the defendants claim title. At the thoroughfare end of Twenty-fourth street, the complainant erected a wharf and a breakwater, which are used for landing and fishing purposes. The complainant has sold two lots to purchasers since it undertook the improvement of this tract. One of the lots it sold, in 1892, to a Mr. Sharpless, who erected a cottage upon it, which has been occupied every season since then. This house is located within the triangle claimed by the defendants. The complainant also continued the "brushing" process of protecting the whole ocean front of the tract. Sandhills occasioned by this "brushing" were from four to five feet high, and the "brushing" and these sandhills formed about it, could be seen from many places on the tract, and easily from the railroad track which runs nearly through the middle of the whole tract, and directly across the defendants' triangle. Mr. Barton, while he was the owner, and the complainant ever since, paid taxes as owners of the whole tract. These acts of ownership the complainant shows were done with relation to the tract as an entirety as above stated, and not as to any specific part of it, for the complainant had and claimed no other title to any part than it had to the whole.

The various acts narrated were such as were required for the development and improvement of the lands for sale in town lots or for the protection of the tract from the wash of the ocean. They were of such a visible and notorious character that everyone visiting the tract must observe them. They were operations which manifestly indicated a possession and caretaking by the doer of them, which none but an owner would exercise. The triangle in which the defendants claim an undivided interest

was included within the general treatment given to the tract as a whole, there being no line or boundary defining its limits. The curbed and graded street—Twenty-fourth street—made by the complainant lies directly on the triangle. All the acts of possession which were done by the complainant or its grantor, Barton, are substantially uncontradicted in the proofs.

The things done were not in the nature of trespasses by which the party doing them took something off or gained a profit from the land, but they involved the doing of labor upon the land and actual expenditure of money for the improvement and development and protection of the land itself, and gave notice to the observer that the party doing these acts looked to the land and its future for his recompense. In short, they spoke of possession and improvement by an owner.

In my view, the proofs submitted of peaceable possession of the premises by the complainant antecedent to and at the time of the filing of the bill in this cause show a possession as full and complete as the character of the property in question required of the possessor.

But if the uncontradicted acts of possession done by the complainant's grantor and by the complainant themselves, for years prior and up to the filing of the bill in this case, leave the question of possession doubtful, the operation of the statute of April 4th, 1891, a supplement to the "Act to compel the determination of claims to real estate," &c., must certainly aid the proofs submitted, by making the acts done by their grantees evidential of the complainant's possession. That supplement provides that when a person or corporation shall be in peaceable possession of land, and shall cause a map to be made and filed, dividing the land into lots, laying out and dedicating streets on it, and shall have sold and conveyed any lots, then, to avoid a multiplicity of suits, the grantor may maintain a suit in chancery under the original act, notwithstanding these conveyances, and for the purposes of that suit, "the title and possession of the grantee of the lots shall be deemed and taken to be the title and possession of the complainant." The complainant's case precisely fits the recited circumstances, for it makes the erection and occupancy

of the Sharpless house evidential of possession in the complainant.

The defendants deny that this statute has any other efficacy than to enable the complainant to file a bill to quiet the title to the lots which he may have already sold. Such a construction far from avoiding a multiplicity of suits, would necessitate one bill to quiet the title to the lots sold, and another to those lots which were unsold, both involving precisely the same title. The object of the supplement is plainly to enable the owner, who has divided his land into many lots, and has irretrievably committed his property by dedication of streets and conveyance, to use as a town or village, to settle, once and for all, the title not only to what he has sold, but also to what he intends to sell by a single suit under the act.

The mischief which the statute sought to remedy was the inability of the grantor who had conveyed a lot, to include in the bill to quiet title to his own lands, the lot which he had theretofore conveyed away, perhaps with warranty of title. The statute remedied this difficulty, gave the grantor this power, saved a dismissal of the bill because of the inclusion of the lots sold, and burdened the claiming defendant with the declaration that in such a suit the title and possession of the grantees of the lots should be deemed and taken to be the title and possession of the complainants in such suit. The effect of this statutory declaration, if the owner files his bill to quiet title to the whole tract mapped, is to impose upon the defendant the burden of recognizing the title and possession of the grantees of lots as the possession and title of the grantor complainant.

The defendants have by their own testimony proved that the Sharpless cottage was located upon the triangle. It appears this is a summer cottage erected on a lot conveyed by the complainant, and occupied every summer since 1892, when it was built. Under the terms of the supplement above referred to, the title and possession of its grantee, must be taken to be the title and possession of the complainant. So that it affirmatively appears that this Sharpless cottage was located on a portion of land claimed by defendants at the time the bill was filed, and this

possession must be ascribed to the complainant, and is by the statute related to its title.

The defendant admits in his brief that if the complainant shows " actual peaceable possession of any part of the land described in the defendants' answer, it is entitled to maintain its suit as to the whole of the land described in defendants' answer," but they deny that a showing of possession of adjoining lands will justify a bill to include the lands in defendants' answer.

The acts of possession shown by complainant were not limited to the lands adjoining those claimed by defendants. The general improvements of staking out streets, grading the tract, keeping out the ocean by " brushing," and other acts of development and caretaking indiscriminately covered the whole tract, including defendants' triangle. Twenty-fourth street is built, curbed and graded on the triangle, and so the Sharpless cottage is on it.

The defendants insist that the complainant has a full remedy by a suit against them in ejectment. The act authorizing bills to be filed to quiet titles has been declared by the court of errors to be designed for the relief of parties in peaceable possession who had no means of contesting the adverse claim by a suit at law. *Sheppard* v. *Nixon, 16 Stew. Eq. 632,* and cases cited.

The defendants refer to the twenty-fourth section of the Ejectment act (*Gen. Stat. p. 1285*), which provides for suit in ejectment between joint tenants and tenants in common as enabling the complainant to sue in ejectment. But the complainant does not claim to be a tenant in common with the defendants, and nothing in the case touching the possession, which is the only matter now in issue, indicates that any such relationship exists between the parties. That is the defendants' claim which the complainant denies.

The defendants also refer to *Gen. Stat. p. 1284* § 22 as providing for making defendant a person not in actual possession. That section does provide that such a person may disclaim and subject the plaintiff to costs, but does not provide that he shall defend or have judgment go against him.

They also contend that section 40 provides for an ejectment

---

Oberon Land Co. *v.* Dunn.

---

where there is a claim for part only of the premises. In this case, however, the complainant does not claim a part only but the whole of the premises. The defendants again mistakenly assume that the complainant is bound to accept the position in which they desire to place it.

So they say that section 3 of the Ejectment act provides for making defendant one claiming a right of possession or title in the lands. In fact, that section declares that the defendant " shall be the person in possession, if the premises are occupied, or some person exercising ownership of the premises or claiming title thereto *in case they are unoccupied."* The complainant here insists that it is itself in the occupation of the whole premises.

These sections, notably sections 3 and 24, while they do not enable the complainant to sue the defendants in ejectment, have always empowered the defendants to bring an ejectment against the complainant to test the validity of their claims. They have not seen fit to begin such a suit. The complainant, to bring an ejectment against the defendants under those sections, must abandon, at the start, its position as sole owner of the entirety in the actual possession of the whole tract, and must concede that the defendants claim title to unoccupied premises or that they are tenants in common with the complainant. I do not consider that the complainant is under any obligation to surrender its claim to sole ownership of the whole tract. The defendants have done nothing to assert their title or possession, save to set up by a paper title an undivided interest in a part of the lands of which the complainant is in possession by nearly all the acts of open ownership of which the lands in question are capable. Such a course cannot result in settling their claim, though it does subject the complainant to much embarrassment and consequent loss of sales.

In my judgment the complainant has a right to maintain its bill to compel the determination and settlement of the defendants' claim. I will advise a decree in accordance with the views above expressed.