ANNA R. McGRATH

v.

WILLIAM F. NORCROSS.

[Decided August 22d, 1905.]

1. On a bill to quiet title to lands under the statute where an answer denies that the statutory conditions exist, the issue so raised will be determined by the court of chancery before sending the question of title to be tried in a court of law.

2. In such suit in case of wild or unenclosed lands the complainant may be the owner, or a person claiming to own the lands in fee under a deed or other instrument.

3. Where defendant, claiming wild, unenclosed land, entered and constructed certain stakes along the boundary line, built a small slab stable thereon in full view of the public road, and with his predecessors in title cut timber therefrom, such acts did not constitute possession as against the holder of the record title so as to preclude her from maintaining a bill to quiet title under the statute.

On bill to quiet title, answer and proofs.

This cause has been tried on an amended bill, which includes the substantial allegations of the original bill and the answer to the original bill, which, it has been agreed, shall stand as the defendant's answer to the amended bill also.

The bill of complaint, as amended, recites a title in fee-simple, absolute in the complainant herself, to certain lands in Atlantic county described in the bill of complaint, which lands are therein alleged to be extensive, wild, wooded, unenclosed and unimproved, by reason whereof the complainant alleges she is not in the actual possession of them, but she declares that she is the owner of said lands in fee under deeds and instruments of title which are recorded; that said lands have been assessed for taxes to her and her grantors for five consecutive years immediately prior to the commencement of this suit, and that she has paid said taxes, and that no other person is in possession of said lands.

The amended bill further charges that the defendant, William F. Norcross, claims to own some interest in said lands; that no suit is pending to enforce his said claim, and it is without foundation, unjust and vexatious; that it so affects the complainant's lands that by reason thereof they cannot be sold; that the defendant upon request refuses to relinquish his said claim. The bill is framed under the statute found in *P. L.* 1901 *pp.* 57, 58.

The complainant prays that the defendant may declare specifically what title in said lands he claims and by what instruments it was created, and that this court may decree upon the rights of the parties to this suit in and to said lands; that complainant may be decreed to have a perfect title and the defendant to have no interest therein, and that his claim thereto is unjust, vexatious and void, and for further and other relief, &c.

The defendant's answer denies every substantial allegation of the bill of complaint, and says he claims an absolute title in fee to the whole of said lands, which title was created by a survey to Emund Iliff for seven hundred acres, mentioned in and excepted from a resurvey for seventy-eight thousand and sixty acres made to the West Jersey Society on May 24th, 25th, 26th and 27th, 1773, and returned May 5th, 1774, and by the several conveyances from said Iliff and his successors in title to said defendant.

Pending this suit, and before the hearing of the cause on that phase of it which is disposed of by this opinion, the defendant filed his petition, alleging that numerous questions of fact, and also a question of purely legal title to the premises in dispute, are raised by the pleadings, which are peculiarly within the province of a court of law to determine, and which the petitioner is, by the law of the land, entitled to have determined by a court of law and a jury. The petitioner-defendant prays that the complainant may be directed to bring an action at law against the petitioner-defendant to determine the title to the lands in dispute. Before any disposition has been made of the petition for an issue at law to try the questions of title, this hearing was had

in this court to settle the preliminary question whether in this case the conditions which the statute requires do actually exist, so that the defendant ought to be ordered to assume the burden of primary proof of his title to the lands in dispute, as is the practice on bills to quiet title, &c.

*Mr. Clarence L. Cole,* for the complainant.

*Mr. Thomas E. French,* for the defendant.

GREY, V. C.

It is the established practice of this court, where the answer denies the complainant's allegations that the statutory conditions exist, to try these matters here before sending the question of title to be tried in the law court. *Powell* v. *Mayo, 24 N. J. Eq. (9 C. E. Gr.) 178; Beale* v. *Blake, 45 N. J. Eq. (18 Stew.) 668; Oberon Land Co.* v. *Dunn, 56 N. J. Eq. (11 Dick.) 749.*

This hearing is had solely to ascertain whether in this case these statutory conditions exist. The complainant alleges that they do exist, and the defendant denies it.

It will be noticed that the bill of complaint in this cause is framed under the somewhat peculiar provisions of the amendment to the statute authorizing suits in this court to compel the determination of claims to real estate in certain cases and to quiet the title to the same. *P. L. 1901 pp. 57, 58.*

The original statute on this subject, as it appears in *3 Gen. Stat. p. 3486 § 1,* declares that if any person be in the peaceable possession of lands, claiming to own them, and some other person claims to own the land, or some part thereof, and no suit shall be pending which may test the validity of the latter claim, then the person in possession may bring a suit in chancery to settle the title to said lands, and call upon the other claimant to set forth his title and the instrument under which he claims, &c.

The amendment of 1901 provides that in cases where by reason of the extent of the lands in dispute, or because of their being wild, wood, waste, unenclosed or unimproved lands, they shall not be in the actual peaceable possession of the person

claiming to own them, then the person who claims to own them in fee under an instrument duly recorded in this state, who shall have paid the taxes upon said lands, and to whom or to whose grantors the taxes thereon shall have been assessed for five consecutive years immediately prior to the commencement of the suit, shall be presumed to be in the peaceable possession of said lands within the meaning of said act, provided no other person be in possession thereof; and the person so presumed to be in possession may bring a suit in chancery to settle the title to said lands, and may have all the benefits of the statute dealing with that subject.

The only question here and now to be determined is whether the complainant in this cause has shown herself to be within the provision of this amending act of 1901.

Upon the proofs which have been submitted it has, I think, been shown substantially without dispute that the lands in question lie within the county of Atlantic, in this state; that no suit is pending which may test the validity of the defendant's claim to those lands; that they consist in great part of unenclosed and unimproved wood and waste lands, partially covered by timber of varying size, and that the extent of the tract is seven hundred acres or more.

It is, I think, clearly proven that, by reason of the large area of the lands, and their character as unenclosed and unimproved wood and waste lands, they are not in the actual possession of the complainant.

The complainant insists that she claims to own these lands in fee under deeds duly recorded as mentioned in the statute. She produces such a deed under which she claims title, in which Sarah R. Colwell and others are grantors and the complainant, named in the deed as Anna R. Colwell, is the grantee. This deed is dated December 9th, 1879, and was recorded in Atlantic county clerk's office, in book No. 73 of deeds, folio 498, &c., on the 18th day of December, 1879, and purports to convey to the complainant eighteen thousand and sixty-two acres of land lying in Atlantic county. The complainant proves by witnesses and illustrating map that the outbounds of the lands described in

this deed include as part thereof the seven hundred acres of land in dispute in this case. In 1892 the complainant, who was then Anna Richards Coxe, wife of Robert L. Coxe, conveyed by deed that part of the eighteen-thousand-and-sixty-two-acre tract which lies south of the West Jersey and Atlantic railroad, and contains eight thousand and fifty acres, including therein the seven hundred acres here in dispute, to the Mizpah Agricultural and Industrial Company. This deed was recorded in Atlantic county clerk's office, in book No. 161 of deeds, page 141, &c., on the 12th day of February, 1892. The grantee company made a mortgage to the complainant to secure the payment of part of the purchase-money upon the lands conveyed, which the complainant assigned to the State Trust Company. The trust company, by a foreclosure suit in this court, entitled "The State Trust Company, complainant, and the Mizpah Agricultural and Industrial Company and others, defendants," foreclosed this mortgage and sold the mortgaged premises, and at the sheriff's sale purchased them. Subsequently, by a deed dated February 10th, 1897, recorded on May 24th, 1897, in Atlantic county clerk's office, in book No. 213 of deeds, folio 242, the State Trust Company conveyed the mortgaged premises back again to the complainant, who had then become Mrs. Anna R. McGrath.

The defendant contends that the complainant is not the owner of the disputed lands, because the deeds which the complainant produces do not include the *locus in quo* as part of the lands thereby conveyed. He insists that the original survey of those lands, under which these conveyances produced by the complainant are succeeding steps, did not include the lands in dispute, and that the deeds themselves do not in their descriptions include those lands, and that the complainant is thus shown not to be the owner of them.

This contention of the defendant is based on a misapprehension of the statute. It does not limit the benefits of the act to actual owners of the disputed premises. On the contrary, the statute prescribes that the complainant may be either the owner or a "person claiming to own the same in fee, under a deed or other instrument." The words of the act are simple and of clear

meaning. They need no interpretation or construction. Arguments based upon the possible injustice of the operation of the act, if it be given its manifest meaning, may properly be addressed to the legislature, but not to the courts. It is but fair to say that in the present case I am unable to see that it works any hardship.

The practical operation of the statute saves this question of the actual inclusion of the *locus in quo* within the title deeds which are claimed to convey it for the determination of the jury on the trial at law. This point in the case is not here adjudicated. All that I find on this phase of the matter is that the complainant claims to own in fee, under certain recorded deeds, the lands in dispute. That she has so claimed title is made plain enough by her attempts to sell and convey under those deeds, and to put her grantees into possession, and by her cutting of timber and hauling and carrying it away from the disputed lands. The identity of the lands regarding which these claiming acts took place is practically shown by the proof that the defendant personally sought to defeat these efforts of the complainant. Indeed, the evidence on both sides shows that a struggle on some part of the lands in dispute has been going on for years between the complainant and her grantors and the defendant and persons under whom he claims.

The next disputed point is whether the complainant has shown that the taxes on the lands which she claims to own have been assessed to her for five years successively, immediately prior to the commencement of this suit, and that she has paid the taxes on such lands. The proof, substantially uncontradicted, is that the complainant has been assessed for taxes as owner of a large tract of land which includes the premises in dispute. She produces regular tax receipts showing such assessments of taxes against her upon the larger tracts, and proves that they include the seven hundred acres which constitute the *locus in quo*. These receipts are for taxes for the years 1896, 1897, 1898, 1899 and 1900. This suit was commenced in 1901.

The defendant insists that under the statute the proof must show that the seven hundred acres in dispute were specifically

and separately assessed for taxes to the complainant; that a
showing of assessments of larger tracts, even if they include the
*locus,* is not a compliance with the statute. He further contends
that the tax receipts produced and other proofs do not show that
the property taxed did in fact include that which is in dispute.

The statute must be reasonably construed. It ought not to be
held to nullify the axiom that the statement of the greater in-
cludes the less. The large tracts on which taxes are shown to
have been paid are proven to include within their general out-
bounds and quantity the lands in dispute.

The result of this showing on the part of the complainant is,
by the express terms of the statute of 1901 (at *p. 58*), that she
shall be presumed to be in peaceable possession of the lands in
dispute, within the meaning of the act, provided no other person
be in possession thereof.

This presents the last incident necessary to the establishment
of the complainant's status as a party entitled to file her bill to
quiet title to the premises in dispute.

The defendant contends that he himself is in possession of
those lands. The undisputed evidence is that the premises in
question consist of seven hundred acres or more of unenclosed
lands, on parts of which timber is standing in various stages of
growth. None of the land is cultivated. None of it is so fenced
as to enclose it, or to suggest a boundary or exclusion of other
lands.

The defendant insists that for many years he has maintained
a line of stakes on two sides of the tract, which stand about as
high as a man's shoulder, and which are from about one chain
to one chain and a half apart; that he and his predecessors in
holding the title have cut timber on it; that he has built of
slabs a small stable, which stands on a clearing on the property
in full view of the public road, and that he has gone over the
lands every few days and has always driven other people off of it.

The characterization of the defendant's alleged acts in assertion
of his occupation of these lands, in my opinion, shows nothing
which can be deemed such a possession as the statute contem-
plates. The act is intended to remedy a vexatious condition

in which a person may find himself to be who honestly claims that his recorded title gives him the ownership of a large tract of wild, unimproved and unenclosed lands, which have been assessed to him for five years, and on which he has paid the taxes, in which property another person, who does not occupy the lands, yet insists that he has an interest which he does not disclose in support of his claim; who brings no suit to establish that claim, but himself physically enforces his alleged right by the cutting of timber and other acts of intrusion on the property.

The original act which authorized suits to quiet titles to land required that the complainant should be in the peaceable possession of the land the title to which was to be quieted.

Peaceable possession of a large area of wild land is, under ordinary conditions, practically impossible. The amending statute of 1901 is intended to raise a presumption of peaceable possession of such wild lands in favor of persons who have deeds for such property which have been recorded; who for five years have been recognized by the local taxing officers as owners thereof, and who have manifested the good faith of their claim to ownership of those lands by the payment of the taxes.

But the amending statute does not apply in cases where the lands in question are in the possession of any person other than the party who holds the recorded deed therefor and has paid taxes thereon.

I think it quite clear that by this proviso the statute intends to avoid creating by presumption a possession in the complainant in any case where possession in fact exists in another person. The possession of that other person which will defeat the operation of the statute must therefore be an actual, as contrasted with a presumptive or constructive, possession. The defendant who sets up such a possession must show that it has characteristics which would of themselves give notice that he was in possession of the premises in dispute.

In the case at bar the defendant attempts to make such proof. It seems to me to be clear that no one who saw the occasional stakes on part of the tract, or the unoccupied slab stable, or the cut timber, could have reasonably believed that anyone was in

possession of the seven hundred acres of land in dispute. The acts alleged to have been done were wholly unrelated to any defined territory, and might be asserted to apply just as forcefully to show a possession of the land on one side of the wide-apart non-closing line of stakes as of the land on the other side of that line. An unoccupied slab-built shed, such as the stable evidently was, gave warning, not of occupation, but rather of abandonment. Occasional cutting of timber over part of an undefined tract is too common a trespass to be held to indicate possession of a defined territory which is not in any way enclosed or separated from surrounding timber of like general character.

The defendant himself does not appear to have done any act whereby he even colorably defined the lands which he claims. He has recorded no deed which conveys those lands to him, nor has he done any act which has in any way distinguished the lands which he claims from surrounding lands of the same character.

In my view, considering all of the evidence, it is shown that no other person than the complainant is in possession of the lands in dispute.

This condition of the proofs entitles the complainant to maintain her bill of complaint in this court, for she has here proven the existence of all the required jurisdictional facts.

I will advise a decree accordingly, with costs to the complainant.