Complainant, herein sometimes referred to as Wharton, has filed a bill to quiet title to certain lands situate partly in the city of Brigantine and partly in Galloway township in Atlantic county. This land is known as Boot Island and is situate in the inland waters leading to Absecon Inlet, with "Main Channel" to the west and "Golden Hummocks Thorofare" to the east. The island is divided by what is known as the inland waterway channel and also Fish Tail Cut, which was cut through the island by the Board of Commerce and Navigation of the State of New Jersey, the lands to the north of said waterway being situate in Galloway township and those to the south in the city of Brigantine. Prior to 1923 complainant claimed to own all of Boot Island, with the exception of the northermost "toe," which belonged to the estate of John J. Gardner, deceased, containing forty-four acres, but in that year complainant conveyed the southermost portion of the island (approximately thirty-six acres) to the Island Development Company, which company subsequently conveyed to the Atlantic-Brigantine Bridge Company, and one or the other of these companies constructed what is known as Brigantine boulevard over the land so conveyed.
Complainant claims title through a proprietary survey made by the Council of Proprietors to one Clark on February 20th, 1903.
The matter comes before me on a preliminary hearing to determine whether complainant is entitled to maintain its bill, the defendant having denied the existence of the statutory requirement in the complainant.
The statute, R.S. 1937, 2:76-2, provides:
"Any person in the peaceable possession of lands in this state and claiming ownership thereof, may, when his title thereto, or any part thereof is denied or disputed, or any other person claims or is claimed to own the same, or any part thereof or interest therein, or to hold a lien or encumbrance thereon, and when no suit is pending to enforce or test the validity of such title, claim or encumbrance, maintain a suit in the court of chancery to settle the title to such lands and to clear up all doubts and disputes concerning the same." *Page 93 
 Section 2:76-3 provides:
"If the lands are not, by reason of their extent or because they are wild, wood, waste, uninclosed or unimproved, in theactual peaceable possession of the owner or person claiming ownership, the owner or person claiming ownership in fee under a deed or other instrument, duly recorded in this state, who haspaid taxes thereon and to whom or to whose grantors the taxes thereon have been assessed for five consecutive yearsimmediately prior to the commencement of the suit authorized by section 2:76-2 of this title, shall, if no other person is inactual possession thereof, be presumed to be in peaceable possession thereof, and shall have all the rights and benefits of and be subject to all the provisions of this article."
The lands in question are uninclosed and unimproved and consist of sand accumulations unsuited for agriculture. The general elevation is above normal high water but is at times covered by storm tides. The only use that could be made of this land at the present time would be gunning for wild fowl, fishing in the adjacent waters, and oystering or clamming therein. It does not appear in the evidence that salt hay grows thereon in harvestable quantities.
Complainant contends that it was in peaceable possession at the time of the filing of the bill and has so continued to be, and that it has paid the taxes assessed thereon, starting with the year 1933 and for five years thereafter; that no other person is in actual possession of the lands in question and that there was no suit pending to enforce or test the validity of complainant's title at the time of the filing of the bill. All of these assertions are denied by the defendants herein, sometimes referred to as McGeorge.
The proofs as to actual possession on complainant's part disclose that in October of 1911 Wharton conveyed to the State of New Jersey a right-of-way across the island; that the state dredged a channel 200 feet wide which bisected the island and diverted the inland waters through that channel and made it a part of the inland waterway of the state. The work of dredging occupied several months before completion, during which time a large suction dredge or dredges worked continuously and at which time large pipes to conduct the dredged sand from the cut to places of deposit were plainly visible from all points of the compass and during this time *Page 94 
a large number of men were engaged in this work, and it was by reason of this channel that Boot Island may be said to have become two separate islands.
In 1923 complainant conveyed the southermost portion of Boot Island to the Island Development Company and it, in turn, conveyed to the Atlantic-Brigantine Bridge Company, and a portion of the land so conveyed was used to construct the present boulevard connecting the city of Brigantine with Atlantic City, and has been continuously used as such for many years past. The lands so conveyed and so used are not the subject of this suit, it being the remaining portion of Boot Island north and south of the now inland waterway aforesaid which is here contested.
In 1924 complainant bought from the New Jersey Board of Commerce and Navigation a riparian lease covering lands between high and low water on both sides of the locus in quo. This lease was recorded in the records of the board and extended for a period of fifteen years and upon its expiration was renewed for five years additional.
Complainant sent its surveyors on the lands at various times for survey and map work and in 1936 they erected a cabin on the lands in question, which cabin was never fully completed but was boarded up in an incompleted state.
As opposed to this proof, defendants show that in December of 1936 an agent of the defendant visited the island and saw the cabin aforesaid partially completed and in addition to the cabin he saw two small shacks located along the course of the inland waterway, one on the northern side and one on the southern side.
In June of 1925 we find that the defendant disputed complainant's title by instituting a suit in ejectment in the United States District Court, describing in the declaration the whole of Boot Island. The suit was against the complainant and its grantee, the Island Development Company aforesaid, as well as the latter's grantee, the Atlantic-Brigantine Bridge Company. In this suit, of course, McGeorge alleged that Wharton and the other defendants in the ejectment suit were in possession. After the institution of that suit, McGeorge dismissed as to Wharton and amended the *Page 95 
description of the land as set forth in the original bill, so as to describe only such part of Boot Island as Wharton had conveyed as aforesaid, so that the suit thus restricted continued against Wharton's grantee and its grantee and not against Wharton. This suit was tried, resulting in favor of McGeorge; the judgment was reversed by the Circuit Court of Appeals and the suit permitted to drag until September of 1935 when, by consent, a judgment was entered against the defendants named therein but, of course, not against the complainant herein. Such proceedings were had by virtue of that judgment that McGeorge was put in possession of the premises described in the amended complaint by the United States marshal.
In December of 1936 McGeorge filed another suit in ejectment for all of Boot Island excepting the land covered by the amended complaint in the first suit above mentioned. This second suit in ejectment was against Adams and Darby, and Barker and Yates. The former were squatters who made occasional use, for fishing or oystering purposes, of one of the shacks, and who were observed by the agent of McGeorge, as heretofore mentioned. Barker and Yates were the contractors who erected the cabin for complainant, as heretofore set forth. Adams and Darby attorned to McGeorge and were given a lease by him for one of the shacks aforesaid, but Barker and Yates filed answers and in February of 1938 the ejectment suit was dismissed for lack of prosecution "without prejudice."
It will be noted that outside of these two ejectment suits nothing was done as against complainant and, as heretofore noted, complainant was dismissed as a party to the first suit and was not a party to the second suit. Surely neither of these ejectment suits constituted any act or acts under which defendant claimed to be in possession of the locus in quo as against complainant but, to the contrary, were tacit admissions that defendant herein was not and did not claim to be in possession, but that he was being deprived of his right thereto. It would seem to me to follow that complainant was in possession of the locus in quo, as nearly as possession may be held on the character of land in dispute, and that defendant *Page 96 
must have known of this or could have easily observed it by reason of the character of acts done by the complainant in pursuance of its possession. Surely the cutting through of the inland waterway channel, changing the typography of the island as it did, constituted an adverse user of the locus in quo, and while the defendant sued in ejectment when complainant built the cabin, defendant did not make complainant a party thereto. It is true that complainant did not occupy the cabin aforesaid, but it was there and defendant knew that complainant claimed title to the island and had known that fact since the institution of the first ejectment suit. In addition to this, riparian leases were issued by the state and while there is no proof that complainant oystered or made any other use of the riparian lands, still it was an act of possession of which defendant should have taken notice.
The character of possession by complainant, in order to come within the statute as one in peaceable possession, is that set forth in Blakeman v. Bourgeois, 59 N.J. Eq. 473;45 Atl. Rep. 594, in which the court said (at p. 479):
"If the acts of possession are such as an owner would exercise on land of the character in question they are sufficient."
See, also, Hayes v. Thomas, 2 N.J. Mis. R. 768; Bradley v.McPherson, 58 Atl. Rep. 105; Oberon Land Co. v. Dunn, 56 N.J. Eq. 749; 40 Atl. Rep. 121, wherein the court said (at p. 751):
"Any acts regarding the premises which would naturally convey to an onlooker the sense that the party doing or directing them was the owner, are evidential of such a possession as the statute contemplates." Allaire v. Ketcham, 55 N.J. Eq. 168;35 Atl. Rep. 900; Powell v. Mayo, 24 N.J. Eq. 178; Dittrich v. Cline,99 N.J. Eq. 444; 131 Atl. Rep. 908.
Complainant's right to proceed under R.S. 2:76-2, in so far as the peaceable possession required by that statute is concerned, would seem to me to be established without the necessity of recourse to section 2:76-3, but defendant says, even so, the proofs show that there is a suit pending to test the validity of the title to said lands. This *Page 97 
claim by defendant arises through the ejectment suit filed by McGeorge against Adams and Darby and Barker and Yates, which, as heretofore noted, was dismissed for lack of prosecution, "without prejudice," and McGeorge now says he still has "the right to substitute proper parties and proceed therein." The answer is obvious. Even if such right exists, that right has not been exercised and the suit is not pending.
As an alternative to complainant's proof of peaceable possession under section 2:76-2, complainant offers proof undersection 2:76-3 "that he claims ownership in fee under a survey and that he has paid taxes for five consecutive years prior to the commencement of this suit and is therefore presumed to be in peaceable possession."
But it is said the act provides that the presumed peaceable possession consequent upon payment of taxes is only when "no other person is in actual possession" and not necessarily the defendant McGeorge, and that in the suit of McGeorge v. IslandDevelopment Co. et al. (first ejectment proceeding), the United States marshal delivered possession to McGeorge and his possession thus obtained was that of all defendants in the present suit. This claim is unsound because the lands affected by that judgment were not the lands described in the bill of complaint herein and the possession delivered to McGeorge was only of the lands described in the complaint in the law suit.
But defendant contends that after starting the ejectment suit against Adams and Darby et al., these two named defendants attorned to McGeorge and accepted a lease from him as to one shack. He does not follow this up by showing any continued occupancy by Adams and Darby of these shacks and, of course, complainant did not know of any letting. The shacks were not of such character as to give notice of any claim of possession by McGeorge. They were such shacks as may be seen on waste island lands in the inland waters along the Jersey coast and would not constitute possession by McGeorge, under the cases.
In McGrath v. Norcross, 70 N.J. Eq. 364; 61 Atl. Rep. 727,
the court said (at p. 371):
"But the amending statute does not apply in cases where *Page 98 
the lands in question are in the possession of any person other than the party who holds the recorded deed therefor and has paid taxes thereon. I think it quite clear that by this proviso the statute intends to avoid creating by presumption a possession in the complainant in any case where possession in fact exists in another person. The possession of that other person which willdefeat the operation of the statute must therefore be an actual,as contrasted with a presumptive or constructive, possession."
There is no proof of actual possession by McGeorge or Adams and Darby at the time of the filing of the bill herein and McGeorge may not rely on a presumptive or constructive possession.
Complainant, in support of the presumptive possession mentioned in section 2:76-3, has offered tax receipts from 1933 to 1939, both inclusive, showing payment of taxes to Galloway township and the city of Brigantine in each of these years. Defendant admits that complainant has paid all taxes assessed against the locusin quo by the city of Brigantine for the five-year period above mentioned, but says the taxes in Galloway township were not paid year by year; that they were made in two payments, those for 1933, 1934 and 1935 on July 25th, 1935, and those for 1936, 1937 and 1938 on August 11th, 1938, and the insistment is that the statute "means it is the continuous assessment and the continuous payment for five consecutive years" immediately before the filing of the bill, which "shall be equivalent to presumptive possession." The statute does not so state. The provision therein is "who has paid taxes thereon and to whom * * * the taxes thereon have been assessed for five consecutive years immediately prior," c. There is no question but that the taxes were assessed in the name of complainant for five consecutive years and that they were paid by the complainant as above set forth, and all the statute requires is that they be assessed for five consecutive years in the name of the complainant and that they be paid by the complainant, without requiring that they be paid during the year in which they were assessed.
But defendant says, even so, the testimony shows that *Page 99 
Galloway township assessed the lands in bulk instead of by lot and block number and that it had no right to do so, and the argument is that Boot Island was not assessed because the tax map descriptive thereof does not correspond with the language used in the tax receipts.
There may be no question that there was a misunderstanding between the taxing authorities, including the township committee and the assessor and collector in Galloway township, and that while the law required a tax map and one was prepared in accordance with the law, the tax authorities failed to follow it with respect to the Wharton properties, at least, and it may well be that the action of the township committee in reference to its so-called correction of the tax duplicates could have been the subject of litigation and might well have resulted in that action having been declared to be illegal, yet there can be no doubt, as I see it from the evidence, that complainant paid taxes in accordance with the bills rendered, and that it paid all the tax moneys required by the township and that the tax collector receipted therefor and the township accepted the money in full payment, and included in the lands assessed was the locus inquo. The language of the act is "who has paid taxes thereon" and "to whom the taxes thereon have been assessed for five consecutive years." This, from the evidence, complainant did,i.e., it paid the taxes and the taxes were assessed for five successive years against the locus in quo, and even though the procedure with reference to the assessment of these taxes was irregular, it is sure that "the person against whom or the property upon which it is assessed or laid is, in fact, liable to taxation" and therefore the attack made on this proceeding may not be litigated herein. R.S. 54:4-58.
 RES ADJUDICATA OR ESTOPPEL.
The claim is that the litigation between McGeorge and the complainant's grantor, Island Development Company, which resulted in McGeorge being declared to be the owner of the fee in the southerly strip, finally and for all time settled the title of the whole of Boot Island, excepting that *Page 100 
part belonging to the Gardner estate, and that the fee-simple title therein established may not be again litigated. We have seen that complainant was dismissed as a party to that litigation and that the declaration in that suit was amended so as to exclude the remaining land and to only include the lands conveyed by complainant to the Island Development Company.
It does not appear in evidence why the ejectment suit was not defended by the Island Development Company or the Atlantic-Brigantine Bridge Company, but the court may not blindfold itself to the knowledge it has of the financial collapse of these companies, this knowledge having been gained through insolvency proceedings in the case of John Murtland v.Brigantine, Inc. (Docket 99, page 495), in which case a receiver was appointed for the Development Company, and this receiver, by proper order of this court, after notice to creditors, c., was instructed not to defend but to abandon defense and permit judgment to be entered by reason of the fact of lack of financial ability to defend and because under the then market conditions and the financial position of the defendant companies, the worth of the land did not justify the expenditure. After this order had been entered and counsel for the receiver had so advised the United States District Court, the jury was instructed to bring in a verdict for McGeorge, without proof of title in him, and that judgment is binding on the defendants therein but certainly not on Wharton, who had no participation therein by reason of his dismissal as a party. He had no interest in maintaining title for his grantee and was not a privy in the sense that the judgment bound him, especially in view of the fact that the locus in quo was no part of the lands in that suit.
It must be remembered that the present suit is not by one claiming title under the defendants in the United States court suit, but by one who was not a party, and with respect to lands not embraced in that suit. Wharton claims nothing under the defendants, but relies on his independent title. Complainant is not a privy with defendants in the former suit for the reason that "privies" means nothing more than claiming under. Privity implies succession and a privy must *Page 101 
come after him to whom he is privy and never precedes. 50 C.J.405. Of course, if a judgment of possession had been obtained against Wharton, those claiming under him would have been bound by that judgment whether parties or not.
It is quite true that a judgment by default is just as conclusive an adjudication between the parties of whatever is essential to support the judgment as one rendered after answer and contest. Last Chance Mining Co. v. Tyler Mining Co.,157 U.S. 684. See, also, 15 R.C.L. 987 § 461. But it is also true that a judgment by default or on withdrawal of defense is "conclusive only as to such matters or issuable facts as are properly averred in the declaration." 15 R.C.L., supra. The issuable facts were that McGeorge claimed title to the lands described in the ejectment suit as against the two companies but not as against Wharton or the lands comprising the locus in quo
in this suit.
The case of Penrose v. Absecon Land Co., 94 N.J. Eq. 436;120 Atl. Rep. 207, seems to be controlling in this case, wherein the lower court had directed that defendants' answer be struck out and the bill be taken as confessed because title involved in that suit had been settled adversely to defendant in other cases in the Supreme and Chancery Courts, hence was res adjudicata.
The Court of Errors and Appeals, in reversing, said:
"* * * and with respect to the former decree in Chancery, we think it fails to meet the tests of res adjudicata. Mrs. Charlton was not a party to that litigation. Her predecessors in title were, but this alone is not enough, for the prioradjudication in order to be binding must have affected the sameproperty as that now in dispute. 23 Cyc. 1253. The land in question in the former suit did not include that described in the present bill. It follows that the Court of Chancery was in error in summarily holding that complainant's title as against defendant Charlton was res adjudicata." (Italics ours.)
Of course, in the prior litigation, even if Wharton had not been a party, if the construction of the deed or other written instrument of title had been involved this court would follow the decision in the prior litigation, but such is not the case *Page 102 
herein, as it was in Penrose v. Steelman, 38 Atl. Rep. 807, and the companion case of Steelman v. Atlantic City SewerageCo., 60 N.J. Law 461; 38 Atl. Rep. 742, upon which the defendant strongly relies. In that case the court said (at p. 807):
"The precise question presented in this case was decided in an action brought in the Supreme Court, and tried at the Atlantic Circuit. The plaintiffs in that action were the defendants in this suit, and the defendants in that suit were the grantees of the complainant in this. The subject-matter of the action was to try the question of title depending upon the construction to be given to the descriptions in the three deeds from Andrew Leeds to this three sons, the description of which has been already set out. In that action the description in these deeds was held by Mr. Justice Ludlow to include all the land owned by Andrew Leeds, not only that portion of it lying directly north of the fourth line of the 347-acre tract, but all the land included by expanding the description east and west until it strikes Beach thoroughfare, and extending in a northerly direction until it strikes Clan thoroughfare. Upon writ of error to the Court of Errors this view of Mr. Justice Ludlow has been recently affirmed. Steelman v. Sewerage Co., 38 Atl. Rep. 742. The effect of that decision is a precedent directly in point, and must control this court in construing the same deeds in this suit."
From the above it appears that the decision was based on the principles of stare decisis, the court saying, again quoting:
"The effect of that decision is a precedent directly in point, and must control this court in construing the same deeds in this suit."
The case of In re Walsh Estate, 80 N.J. Eq. 565;74 Atl. Rep. 563, carefully reviews the law pertaining to res adjudicata as well as estoppel arising by reason of a prior judgment, and holds that two items of an account having been the subject of litigation in a prior Chancery suit between the same parties, wasres adjudicata in a subsequent suit.
The case of Camden-Atlantic and Ventnor Land Co. v. VentnorCity, c., Railroad Co., 106 N.J. Law 125; 147 Atl. Rep. 405,
merely held that: *Page 103 
"An adjudication in an action of ejectment that the defendant in that suit had a fee-simple absolute title in the land in question is res adjudicata in a later ejectment suit brought by the same plaintiff against a defendant who derives his title from the defendant in the former suit."
Here the suit is not by one claiming title under defendants in the United States court suit but by one who was not a party to the former suit and claims nothing under the defendants therein, but relies on its independent title. As said before, there is no showing that Wharton is in any way liable to his grantee by reason of defective title conveyed by him, and in this respect the case differs from Scott v. Hall, 60 N.J. Eq. 451;46 Atl. Rep. 611.
Defendant cites many cases in an attempted support of the claim that complainant is barred by the consent judgment in the ejectment suit aforesaid, which the court has carefully considered, but to analyze them herein would be to extend this opinion beyond reasonable length when it seems to me thatPenrose v. Absecon Land Co., supra, is controlling.
It is further argued that complainant had knowledge of the United States court suit and having refused or neglected to appear and defend, he is concluded by the judgment therein. No matter how applicable that insistment might be under certain circumstances, it does not apply herein, where the only lands claimed to be owned by complainant in the present suit were those eliminated from the ejectment suit by the consent of McGeorge, and when McGeorge, having made complainant a party, dismissed him voluntarily and determined to litigate only as to the title of the land in which complainant had no interest. But it is said, even so, Wharton financed an effort to open the judgment in ejectment and actually caused a petition to be filed to that end and was unsuccessful. Even so, this action for the opening of the judgment was not a participation in the suit which resulted in the judgment, nor did it make complainant a party thereto so as to bind him thereunder. As said before, there is absolutely no evidence of any participation by complainant, financially or otherwise, in the litigation leading up to the judgment in ejectment.
 My conclusion is that complainant is entitled to proceed. *Page 104