HAL ALLAIRE

v.

REBECCA KETCHAM et al.

1. Under act of 1870 (*Gen. Stat. p. 3486*), which provides for a bill to quiet title "when any person is in peaceable possession of lands, * * * claiming to own the same" &c., both actual and peaceable possession are, on complainant's part, jurisdictional facts, and if denied by defendant, must be settled as the preliminary question.

2. On a bill to quiet title, it appeared that about 1856 complainant's predecessor in title cut hoop poles from the tract in controversy up to the line claimed, his men working for three months; that in 1871 stakes were placed on the line and trees marked, and that since that time complainant had stopped any trespassing on the land; that he stopped a sale of the land by defendants in 1884; that no wood had been cut therefrom for over twenty years till 1894, when persons working under some or one of the defendants began cutting and were immediately enjoined under the pending bill.—*Held*, that complainant was the actual possessor of the premises.

3. Peaceable possession need be shown against defendant only.

4. Possession of complainant is peaceable, within said act, where defendant, setting up a claim of title, has not interfered with complainant's possession by an act which is suable at law, and suit upon which will or may involve the title of defendant.

5. Where acts of trespass, committed under the direction of some or one of the defendants, have been enjoined under such a bill, and the only answering defendant does not allege that she is responsible for the trespass, and may be sued for it, and the bill is taken *pro confesso* against the other defendants, there appears no such interference with complainant's "peaceable possession" as would oust the jurisdiction under the act.

6. On the issue of the true location of a boundary line, a return from the board of proprietors, wherein the disputed line is located by reference to certain boundary lines of other tracts, which are proved to be well established and recognized, must prevail over a map on file in the surveyor's office, show-ing a different location of the disputed boundary.

7. In a bill to quiet title, where the origin of the record title under which defendant claims is not shown, the title devised must depend, in the first instance, upon possession, and this must be shown.

On bill to quiet title, answer, replication and proofs.

*Mr. Halsted H. Wainwright,* for the complainant.

*Mr. Robert Allen, Jr.,* and *Mr. James Steen,* for the defendants Rebecca Fielder and William Fielder.

EMERY, V. C.

This is a bill to quiet title under the act of 1870. *Rev. p. 1189; Gen. Stat. p. 3486.* The land in question is unen-closed woodland, situate in Wall township, Monmouth county, and the bill, in addition to the usual allegations, contained an allegation that the defendants or some or one of them were cut-ting the timber on the lands, and that those of the defendants who were cutting the timber, or causing it to be cut, were non-residents of the state and irresponsible. Upon filing the bill a preliminary injunction was issued, restraining the cutting of timber or removal of any which had been cut, pending the hear-ing. The bill alleged peaceable possession of the premises and has been taken as confessed against all of the defendants except Rebecca Fielder and her husband, William Fielder.

A preliminary question of some difficulty has been raised. The statute confers the right to file a bill in equity to quiet title " when any person is in *peaceable possession* of lands in this state, * * * claiming to own the same " &c. Actual pos-session and peaceable possession are, on complainant's part, as has been settled, jurisdictional facts, and if denied, as has been done by the answer in this case, must be settled as the prelimi-nary question. *Sheppard* v. *Nixon, 16 Stew. Eq. 627 (Errors*

*and Appeals, 1887*); *Yard* v. *Ocean Beach Asso., 4 Dick. Ch. Rep. 306* ; *Beale* v. *Blake, 18 Stew. Eq. 668, 669* (*Vice-Chancellor Pitney*).

As to actual possession, the lands here in question are unenclosed woodlands, and the proofs of actual possession in relation to such lands are to be such as are required by the character and situation of the lands.  On the complainant's part it is proved that about 1856 complainant's predecessor in title, James P. Allaire, cut hoop poles from the whole tract up to the line claimed, his men working for three months, and that in 1871 stakes were placed on the line and trees marked, and that since that time the complainant has stopped the trespassing by cutting wood on the lands by any person, so far as it has been brought to his knowledge by the persons whom he has employed to take charge of his lands.  Other assertions of claim were made, not extending, however, to acts upon the land itself, such as stopping sale of the land by defendants in 1884.  Except in these instances no wood has been cut from the lands in dispute for over twenty years and up to November, 1894, when persons working under some or one of the defendants named in the bill began cutting and were immediately enjoined under this bill. So far as possession is required by the statute, I think the proofs show that the complainant was the actual possessor of the premises in dispute, and that this possession has been proved by acts of ownership such as were required by the nature and situation of the property.  Has the possession been "peaceable" under the statute ?  If by *peaceable* is meant quiet and peaceable as to every trespasser, whether claiming title or not, then the possession cannot be said to have been altogether peaceable, for the trespassers whom complainant ordered off disturbed this peaceable possession.  But I think the true construction of the statute is that the possession must be peaceable as against the defendant.  And further, it seems to me that in determining whether the possession as to the defendant is peaceable, the test must be whether the defendant setting up a claim of title has interfered with complainant's possession by an act which is suable at law, and suit upon which will or may involve the title

of the defendant.  This is the test applied by the courts to the term " peaceable " as connected with the acquiring of easements by continued and peaceable possession for twenty years.  *Lehigh Valley Railroad Co.* v. *McFarlan, 14 Vr. 605 (Errors and Appeals, 1881),* see *opinion of Mr. Justice Depue p. 631.*

The situation here in reference to the meaning of the word " peaceable," in this statute, is analogous to that of the " peaceable " user in case of easements, and this construction carries out the object of the statute.  And if the answering defendant, Mrs. Fielder, had admitted the cutting, or that it was done by her direction or under her order, as it now seems to me, the present bill must have been held simply as an injunction bill, restraining trespass pending trial of the title at law.  But Mrs. Fielder does not, either in her answer or evidence, as I read it, admit that the cutting in 1894, west of the disputed line, was done by her direction.  The affidavits to the bill show that it was done by the direction of another defendant, Rebecca Ketcham, who lives out of the state, and against whom the bill has been taken *pro confesso.*  Mrs. Ketcham's servants were enjoined from further cutting for her upon filing the bill, and have since desisted.  If this cutting was not done by defendant Fielder's orders or under her direction, then she is not suable for the trespass, and, so far as Mrs. Fielder, the answering defendant, is concerned, this cutting did not interfere with the peaceable possession of complainant.  On the contrary, if the complainant, on being advised of the cutting under Mrs. Ketcham's order, procured an injunction under this, which was acquiesced in by Mrs. Ketcham, then the immediate procuring of this injunction may be taken as proof of another assertion of right of ownership by complainant against Mrs. Fielder. Unless Mrs. Fielder is liable to be sued for this act of trespass, and thus involve her title, I see no interruption of the peaceable possession of complainant.  The burden of proving that she is responsible for the cutting and may be sued for it devolved upon Mrs. Fielder, and in order to oust the jurisdiction under the act, this must appear affirmatively.  I conclude, therefore, that as the case appears, I have jurisdiction.

Upon the hearing, it appears that the principal dispute between the parties is the location of the easterly line of a lot of woodland, which was devised by one Benjamin Jackson to his son, Benjamin Jackson, by will dated November 7th, 1806. By this will the testator devised to Benjamin Jackson, the son, in fee, " twenty acres woodland that I took up adjoining Painters Rhoad." This twenty acres of woodland was the westerly portion of a tract of land containing thirty-eight and nineteen-hundredths acres, which had been conveyed by Thomas Parker to the testator, Benjamin Jackson, by deed dated January 24th, 1804, and this tract of thirty-eight and nineteen-hundredths acres had been taken up by Parker by a return from the board of proprietors, dated July 10th, 1802. By his will, Benjamin Jackson devised to his daughter, Rebecca Harris, for her natural life, eighteen acres off this tract he took up.

The defendant Rebecca Fielder claims title to or interest in the eighteen acres thus devised to Rebecca Harris for life, and in reference to her title, one dispute is as to the location of the boundary between the twenty acres of woodland and the eighteen acres. The complainant claims that the boundary between these two portions of the original thirty-eight and nineteen-hundredths-acre tract is the line now visible on the ground from the north end of the property, over a large portion of the property, this line having woodland on one side and cleared land on the other, and being continued by marked trees to the southern boundary of the tract. The defendant claims that the true boundary is located ten chains westerly of this line now dividing the woodland and cleared land. Upon the whole evidence, I am satisfied that the complainant's contention as to the boundary is correct. Speaking generally as to the evidence, the complainant establishes the line by two classes of evidence—first, by the reference in the return for the thirty-eight and nineteen-hundredths acres, to certain boundary lines of other tracts, which are proved to be well-established and recognized boundary lines, and which cannot be satisfied except by the location as claimed by complainant. This location, however, is at variance with the map of the thirty-eight and nineteen-hundredths on file in the surveyor's

Allaire *v.* Ketcham.

office, attached to the original survey, and which shows that the whole of the tract lies on the west side of a public road shown on the map; and this location, if true, would throw the whole tract ten chains further to the west, thus making the eighteen acres include the lands in dispute. But this location would ignore the beginning point, which is also indicated on the map, and which is the only fixed monument referred to in the return. No reference to the wood is made in the return. The map is not referred to in the return, nor can it properly be used to correct its boundaries expressly given. So far as the boundaries are to be fixed by the record, the return must prevail over the map under these circumstances, and the location of the entire thirty-eight and nineteen-hundredths-acre tract, west of the road, cannot be made.

In the second place, I think the complainant has established that the line, as now existing, has for thirty years and more previous to filing the bill been practically recognized by the owners on each side of the line between the woodland and the cleared land as the limit of their respective lands. Defendant claims that about 1870 or 1871, her husband, by her direction, cut several cords of wood from the lands in dispute, but the evidence does not show satisfactorily that the wood then cut was taken west of the line claimed by complainant. The line at the southern portion of it and below the cleared land has woods upon both sides of it, being indicated in this portion by marked trees. The evidence as to the cutting of wood and to the previous cultivation of the land by defendant's father before the present growth of wood, seems to locate the cutting and cultivation east of the line and on lands not claimed by complainant. The assertion of ownership made by defendant by reason of giving permission to gather ice from an ice-pond on the southern portion of the premises, like similar assertions made by the complainant, are of little or no weight in the present case, for the reason that the ice-pond extends across the disputed line, and even if complainant correctly locates the line, the permission of both was necessary, and seems in fact to have been obtained.

The complainant also contends that the defendant has not

shown title to the lands west of the alleged boundary line. The defendant claims that her record title goes back to Benjamin Jackson's will, but her record title, as proved, does not extend back so far. Rebecca Harris, the daughter of Benjamin Jackson, and to whom the eighteen acres were devised, was the first wife of George Harris. After her decease, George Harris married Martha Stratton, and Rebecca Fielder was a daughter of the second wife. Rebecca Fielder's record title, as proved, begins with a deed dated March 4th, 1834, from one Safety Layton, who describes himself as assignee of William Harris, and conveys to George Harris (by metes and bounds) a tract of land set off and allotted to him as his part of the land belonging to his mother, who was deceased. Whether William Harris was a son of Rebecca Harris does not appear by the evidence, and even taking the devise of the eighteen acres to have been to Rebecca Harris in fee, the origin of William Harris' record title is not shown, and title derived from him, therefore, must depend, in the first instance, upon possession, which has not been shown. Upon both of these grounds, therefore, I conclude that the defendant Fielder has not shown any title to the lands lying west of the line indicated, and which are portions of the lands mentioned in the bill.

A decree will be advised under the statute to that effect, and, if necessary, the particular description of the lands to which adjudication extends may be inserted in the decree. Defendant was entitled, perhaps, to have the description made more definite in the bill, but having proceeded to hearing without application for that purpose the court may, by the decree under the statute, specify the portion of the lands described generally in the bill to which the rights of the parties are settled. Form of decree to be settled on notice.