41 N.J. Super. 324 (1956)
125 A.2d 1
ROBINSON-SHORE DEVELOPMENT CO., A CORPORATION, PLAINTIFF,
v.
WILLIAM R. GALLAGHER, CATHERINE GALLAGHER, HIS WIFE, HARRY H. LAKE, HARVEY L. GANDY AND KATHRYN GANDY, HIS WIFE, STATE OF NEW JERSEY, EDWARD L. JOHNSTONE AND ANGELINA L. JOHNSTONE, HIS WIFE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided August 14, 1956.
*326 Mr. Albert B. Melnik (Messrs. Hermann, Melnik & Lowengrub, attorneys), for plaintiff.
*327 Mr. Paul J. Farley (Mr. Julius Waldman and Mr. M. Milton Singer, of counsel), for defendants Gallagher.
Mr. French B. Loveland for defendants Gandy and Johnstone.
HANEMAN, J.S.C.
The questions here arise as a result of a complaint to quiet title and the answers thereto.
The facts and contentions of the plaintiff and the defendants Gallagher are as follows:
By deed dated May 30, 1842, recorded in the clerk's office of Cape May County in Book 3, page 546, Benjamin Springer, administrator, etc., conveyed the lands in question to Somers C. Godfrey.
On November 7, 1853 Somers C. Godfrey made, executed and delivered a mortgage to secure the payment of the sum of $500 in six months from the date thereof to Alfred Cooper, Benton F. Henderson and Thomas Franklin Cooper, trading under the name of Cooper, Henderson & Co., which mortgage was recorded in the office of the clerk of Cape May County in Mortgage Book F, page 4.
By deed dated June 26, 1854 and recorded in the clerk's office of Cape May County, Elva Gorson, sheriff, conveyed the lands to Lemuel H. Hopkins.
On September 24, 1897 Martha Ann Blakeman filed a bill of complaint in the Court of Chancery entitled "Martha Ann Blakeman, Complainant vs. Emma Bourgeois, et al., Defendants," seeking to quiet title to the lands in question, alleging, inter alia, that: On or about March 19, 1860 the above referred to mortgage was assigned after mesne intervening assignments, to Martha Ann (Gandy) Blakeman (hereafter referred to as Blakeman). The lands mentioned and referred to in said mortgage consisted of an "island of sedge marsh" situate in the Township of Upper, Cape May County, N.J., being the same premises referred to in the above first-mentioned deed. No interest had been paid as was required in said mortgage up to the date of the assignment, and the said Blakeman entered into possession of the *328 described premises and had since that date "continued in the peaceable and actual possession of the same." One Emma Bourgeois had laid claim to the same by virtue of a conveyance from John Wahl Queen, administrator, etc., of the estate of Lemuel H. Hopkins. Thereafter the said Emma Bourgeois obtained what purported to be a release from the above referred to mortgage from Alfred Cooper, representing himself as the surviving partner of the partnership which was the designated mortgagee in said mortgage, but that she took said release with actual knowledge of the prior assignment of mortgage to the said Blakeman. Blakeman had been in "open, notorious, continued and peaceable possession" since on or about 1860. The defendants, by way of answer, denied that Blakeman had any assignment, there being no record thereof in the county clerk's office; that they had any knowledge of any such assignment, "actual or otherwise," and that there was a default under the mortgage, or that Blakeman ever entered into or "is now" in possession of the premises.
In the year 1898 testimony was taken before Vice-Chancellor Grey upon the jurisdictional question of whether the plaintiff had been in peaceable possession. This hearing was preliminary to a motion of the defendants to feign an issue to be tried by the law court on the question of title, they having denied complainant's allegation of peaceable possession. The vice-chancellor filed an opinion which is reported in Blakeman v. Bourgeois, 59 N.J. Eq. 473 (Ch. 1900), but no order or decree was entered thereon nor, as far as the file discloses, were any further proceedings, orders or decrees had in the cause.
On May 18, 1897 Blakeman entered into an agreement with John J. Gandy, Charles G. Miller and David P. Cresswell for the sale of the lands here in question, which agreement was recorded in the county clerk's office of Cape May County in Book 135 of Deeds, page 28. By deed of assignment dated March 3, 1902 the said Charles G. Miller assigned his interest in and to said agreement to John A. Higgons, which *329 deed of assignment is recorded in the county clerk's office of Cape May County in Book 169 of Deeds, page 155.
On June 19, 1897 John Wahl Queen, administrator, etc., of Lemuel H. Hopkins, conveyed the premises to Emma Bourgeois, wife of George A. Bourgeois, which said deed was recorded in Book 135 of Deeds, page 109. The Bourgeoises thereafter executed a declaration of trust which was recorded in Book 145 of Deeds, page 270. The interests of all of the cestuis and their spouses eventually vested in the Ocean City Association hereafter referred to.
On July 28, 1903 Ocean City Association filed a bill of complaint in the Court of Chancery entitled "Ocean City Association, Complainant, vs. David P. Cresswell, et als., Defendants," alleging that: The said Blakeman had executed a deed to Gandy, Miller and Cresswell on August 30, 1897, which deed was to be delivered to them only upon the payment of the balance due her under the above referred to agreement of sale, but that without paying said balance of consideration, the said Gandy, Miller and Cresswell fraudulently obtained said deed and caused the same to be recorded in Deed Book 169, page 153. Immediately after the execution by her of the said deed, Blakeman tendered the same to the purchasers and demanded the balance of the purchase price, which payment being refused, she declared that her agreement with them was "forfeited and at an end." On May 31, 1899 she received $500 from Ocean City Association and signed and delivered to Harvey Lake, its agent, a receipt for the purpose of transferring to him "her title to the said mortgage and premises."
On May 29, 1899 John J. Gandy assigned his interest in the above referred to agreement to Harvey Lake, agent for Ocean City Association, which deed of assignment was recorded in Deed Book 135, page 28.
After final hearing before Vice-Chancellor Bergen he filed an opinion which, together with the opinion of the Court of Errors and Appeals, to which an appeal was taken, is reported as Ocean City Association v. Cresswell, in 71 N.J. Eq. 292 (E. & A. 1906).
*330 By a final decree in said cause, dated March 19, 1907, the Chancery Court directed that the deed from Blakeman to Gandy, Cresswell and Miller was void and directed that the Ocean City Association convey to Cresswell and Higgons each an undivided one-third interest "of such interest" as it obtained from Blakeman in the premises, and that the said two named individuals thereafter pay to Ocean City Association a proportionate share of the sum paid by it to Blakeman. Said final decree further specified that Blakeman convey to Ocean City Association, Cresswell and Higgons an equal undivided interest in said premises by a "good and sufficient conveyance * * * with the usual covenants against encumbrances, and that she deliver at the same time * * * possession of said premises."
Thereafter, by mesne intervening conveyances, the one-third interest of Higgons was conveyed to defendant Gallagher, and the one-third interest of Cresswell and the one-third interest of the Ocean City Association was conveyed to plaintiff.
The plaintiff contends that it is solely vested with the entire fee. It bottoms this claim upon the conveyance of Elva Gorson, sheriff, to Lemuel H. Hopkins.
The defendant Gallagher contends that he is vested with an undivided one-third interest and relates his claim to its origination from the title of Blakeman. It should be parenthetically stated that Gallagher does not dispute that plaintiff has a two-thirds undivided interest in the premises.
The question reduces itself to a determination of whether Blakeman ever obtained the fee by her alleged possession under the Godfrey mortgage upon a default in the payments required thereunder or by adverse possession under the Statute of Limitations. No oral proof of possession under either theory was submitted. In the former connection it should be observed that the sale by Elva Gorson, sheriff, post-dated the mortgage under which Blakeman claims title, the mortgage being dated November 7, 1853 and the deed from the sheriff being dated June 26, 1854, and that the grantee from the sheriff took subject to the mortgage.
*331 Defendant Gallagher argues, in support of his one-third interest, that (1) the case of Blakeman v. Bourgeois established the title of the plaintiff therein and that the matter is res adjudicata, since plaintiff's alleged predecessors in title were parties defendant to that action; (2) should the court conclude contrariwise, then it may, in that event, refer to the transcript of the testimony taken in Blakeman v. Bourgeois and draw its own conclusions therefrom as to whether Blakeman became vested with title by virtue of her possession of the premises; or (3) the case of Ocean City Association v. Cresswell, established defendants' title and that the matter is res adjudicata; or (4) in the event that this court should conclude contrariwise, then it may, in that event, refer to the depositions taken in Ocean City Association v. Cresswell and draw its own conclusions therefrom as to whether Blakeman became vested with title by virtue of her possession of the premises.
Gallagher's claims will be considered in the order above stated.

(1) and (2).
Blakeman v. Bourgeois.
The suit so entitled was a bill to quiet title, in which the plaintiff alleged that title was vested in her in two ways, (1) possession under the mortgage, and (2) general so-called adverse possession.
Her entry under the mortgage was by virtue of Rev. 1877, p. 597, N.J.S.A. 2A:50-21, which reads as follows:
"18. [Equity of redemption.-] That if a mortgagee and those under him be in possession of the lands, tenements, and hereditaments contained in the mortgage, or any part thereof, for twenty years after default of payment by the mortgagor, then the right or equity of redemption therein shall be forever barred."
L. 1870, p. 20, N.J.S.A. 2A:62-1 et seq., the statute relating to actions to quiet title at the time that suit was commenced, reads, as far as here pertinent, as follows:
"That when any person is in peaceable possession of lands in this state claiming to own the same * * * the bill of complaint in *332 such suit shall describe the lands with certainty, and shall name the person who claims, or is claimed or reputed to have such title or interest in, or incumbrance on said lands, and shall call upon such person to set forth and specify his title, claim or encumbrance, and how and by what instrument the same is derived or created."
"That upon application of either party, an issue at law shall be directed to try the validity of such claim, or to settle the facts, or any specified portion of the facts upon which the same depends, and the court of chancery shall be bound by the result of such issue, but may, for sufficient reasons, order a new trial thereof, according to the practice in such cases; and when such issue is not requested, or as to the facts for which the same is not requested, the court of chancery shall proceed to inquire into and determine such claims, interest and estate, according to the course and practice of that court; and shall, upon the finding of such issue, or upon such inquiry and determination, finally settle and adjudge whether the defendant has any estate, interest or right in, or encumbrance upon said lands, or any part thereof, and what such interest, estate, right or encumbrance is, and in or upon what part of said lands the same exists."
"That the final determination and decree in such suit, shall fix and settle the rights of the parties in said lands, and the same shall be binding and conclusive on all parties to the suit; * * *."
In order to qualify a plaintiff to maintain a suit to quiet title under the section of the act under which relief was sought, it was, as it is now, a primary jurisdictional requirement that the plaintiff should be in peaceable possession of the lands, title to which was questioned. Where the defendant denied the plaintiff's allegation of peaceable possession, it was a denial of a jurisdictional fact which had to be determined as a preliminary question. Allaire v. Ketcham, 55 N.J. Eq. 168 (Ch. 1896); Sheppard v. Nixon, 43 N.J. Eq. 627 (E. & A. 1887); Oberon Land Co. v. Dunn, 56 N.J. Eq. 749 (Ch. 1898); Powell v. Mayo, 24 N.J. Eq. 178 (Ch. 1873); McGrath v. Norcross, 70 N.J. Eq. 364 (Ch. 1905); McGrath v. Norcross, 73 N.J. Eq. 274 (Ch. 1907); Penrose v. Absecon Land Co., 94 N.J. Eq. 436 (E. & A. 1922); Fittichauer v. Metropolitan Fire Proofing Co., 70 N.J. Eq. 429 (Ch. 1905).
In Toth v. Bigelow, 1 N.J. 399, at page 402 (1949), the court said:
"When the jurisdiction of Chancery is disputed in an action to quiet title under the statute, R.S. 2:76-2 et seq., it is the practice *333 to bring the matter on for preliminary hearing upon that question alone. Sheppard v. Nixon, 43 N.J. Eq. 627, 632 (E. & A. 1887); Fittichauer v. Metropolitan Fire Proofing Co., 70 N.J. Eq. 429, 433 (Ch. 1905); Kocher & Trier, New Jersey Practice and Precedents, Sec. 316, p. 941 (1924). At such hearing the statutory requirement is satisfied if the complainant proves peaceable possession of the land in question, a claim of ownership thereof by himself, a denial or disputation of his title or any part thereof or interest therein by any other person claiming to own the same and that no suit is pending to enforce or test the validity of such adverse title or claim. * * * Upon proof of these elements the bill will be retained for disposition upon the merits."
The test of peaceable possession is whether the defendant setting up the claim of title had interfered with plaintiff's possession by an act which is suable at law, and by a suit which will involve the title of the defendant. Allaire v. Ketcham, supra.
The defendant was entitled to have the issue of peaceable possession tried in Chancery before it granted or feigned an issue to be sent to a court of law to try the question of "title or no title." Beale v. Blake, 45 N.J. Eq. 668 (Ch. 1889).
The issue so raised is quite distinct from the issue of title in the defendant. Upon proof of peaceable possession the defendant bears the burden of proving title or no title and the plaintiff must then either demolish the defendant's title or show the superiority of his title. Beale v. Blake, supra; McGrath v. Norcross, supra; Fittichauer v. Metropolitan Fire Proofing Co., supra; Toth v. Bigelow, supra.
The written or oral conclusions or opinion of a court do not have the effect of a judgment. They are merely opinions and are not matters considered on the record. From them no appeal will lie, nor are they admissible to create an estoppel. 30 Am. Jur. 938; Vesey v. Driscoll, 132 N.J.L. 293 (Sup. Ct. 1944); In re Beam, 93 N.J. Eq. 593 (Prerog. 1922); McCarty v. Town of West Hoboken, 93 N.J.L. 247 (E. & A. 1919); J.J. Hockenjos Co. v. Lurie, 173 A. 913, 12 N.J. Misc. 545 (Sup. Ct. 1934); Storch v. Storch, 7 N.J. Super. 97 (App. Div. 1950); 2 Freeman on Judgments, p. 1516.
*334 Even ignoring for the nonce the fact that no judgment (order or decree) was entered following the vice-chancellor's written conclusions, it must be remembered that the sole question before the court at that stage of the proceedings was whether the plaintiff had proven the jurisdictional requirement in order to qualify herself to maintain the action. This was preliminary to granting the issue to be tried by the law courts. No such issue was ever feigned and tried by the law courts. The defendants were never accorded an opportunity to have a jury pass on their title. Only, in the language of the statute, upon the "final determination and decree in such suit" may the court "fix and settle the rights of the parties in said lands." Although the plaintiff called upon the defendants to specify their title and how and by what instrument the same was derived or created, the opportunity to so do was never accorded them.
The defendants argue that the court has the power to enter a judgment or order nunc pro tunc, Etz v. Weinmann, 106 N.J. Eq. 209 (Ch. 1930), and although not specifically sought, suggest that if necessary such an action could be accomplished. Even conceding, for the sake of argument, that the court has the power so to enter a judgment, the fallacy in their reasoning lies in the type of judgment or order which would be entered. As demonstrated above, the judgment or order would concern itself solely with the establishment of peaceable possession as a preliminary jurisdictional requisite for the maintenance of an action to quiet title. It would not concern itself with the other elements essential to establish title on either of the then plaintiffs' theories. Such a judgment or order would not be dispositive of the question of paramount title.
It is therefore here held that the case of Blakeman v. Bourgeois is not res adjudicata of the issue, the file having disclosed the absence of any final judgment.
From the foregoing it is apparent that the issues which the court there tried was not one of title but merely one of *335 "peaceable possession." The burden cast upon the plaintiff was far different than that which she should have borne upon proof of adverse possession.
In order for testimonial statements at some prior trial to be admissible, it is generally held that the issues must be the same, since otherwise the "cross examination would not have been directed to the same material points of investigation, and therefore could not have been an adequate test for exposing inaccuracies and falsehoods." 5 Wigmore on Evidence, p. 82.
A consideration of the two alternative theories upon which the plaintiff in Blakeman v. Bourgeois alleged her title was created demonstrates the following:
Rev. 1877, p. 597, provides that when a mortgagee has been in possession of the mortgaged lands for 20 years after a default under the mortgage, the equity of redemption shall be barred. It is self-evident that one of the essential ingredients which must be present in order to terminate a mortgagor's equity of redemption was that possession must have been taken after default under the mortgage. On the hearing in the Blakeman case the sole issue was whether the plaintiff had peaceable possession. It was not necessary to prove a default. The defendants in that matter were neither obliged to cross-examine on that subject nor permitted to adduce any proof to disprove an alleged default.
The elements to sustain a claim under adverse possession are, that the claimant must prove exclusive, continuous, uninterrupted, visible, notorious and hostile possession for at least 20 years. Predham v. Holfester, 32 N.J. Super. 419 (App. Div. 1954); DeBow v. Hatfield, 35 N.J. Super. 291 (App. Div. 1955); Wilomay Holding Co. v. Peninsula Land Co., 36 N.J. Super. 440 (App. Div. 1955).
As must be self-evident, a number of these elements are not fundamental jurisdictional requirements for the maintaining of a suit to quiet title. The additional elements required for adverse possession were not factual issues which the defendants were called upon to rebut or disprove either affirmatively or by way of cross-examination.
*336 In addition, the transcript of the testimony now proffered having been taken on a preliminary step in that proceeding, could not have been used upon final trial. If the occasion arose for plaintiff to prove her case before a jury, the testimony would then have had to be adduced in open court. Sokobin v. Ornstein, 108 N.J.L. 304 (E. & A. 1931).
The transcript of the testimony in Blakeman v. Bourgeois is not admissible in this litigation.

(3) and (4).
Ocean City Association v. Cresswell.
The pertinent prayers for relief in Ocean City Association v. Cresswell read as follows:
"And forasmuch as your orator is without adequate remedy except in this Honorable Court, where matters of this character are particularly cognizable and relievable; to the end therefor, that the said David P. Cresswell, John A. Higgons, Martha Ann Gandy, alias Martha Ann Blakeman, and Harvey Lake, may, without oath, full, true and perfect answer make to all and singular the premises, and that a decree may be made setting aside and declaring null and void, the said deed from Martha Ann Blakeman to John Gandy, David Cresswell and Charles Miller, and the record thereof, and declaring that the said David P. Cresswell and John A. Higgons have no right, title or interest in or to the said mortgaged premises under and by virtue of their said agreement with the said Martha Ann Blakeman, and requiring the said David P. Cresswell and John A. Higgons to surrender the said deed to your orator, or to the said Martha Ann Blakeman; and requiring the said Martha Ann Gandy to execute and deliver to your orator a formal and proper deed of conveyance of her own right, title and interest in the said mortgage and premises, pursuant to her said agreement; and that your orator may have such other or further relief in the premises as the nature of the case may require, and as may be agreeable to equity and good conscience."
The issue of title to the premises was plainly not before the court. In effect, plaintiff was seeking the cancellation of one instrument and the specific performance of another. The question of the basic title to the realty involved was nowhere raised in the pleadings. All that was being sought was a conveyance of whatever interest Blakeman had. This is borne out by the very phraseology of the judgment.
*337 As above stated, estoppel by way of res adjudicata must be based on a judgment and not the conclusions or opinion of the judge. Any reference to the quality of the title in the court's opinion must be considered obiter dicta.
The judgment reads, in part, as follows:
"* * * the said complainant, the Ocean City Association, holds an undivided one-third part of such interest as was conveyed to the said complainant by the aforesaid Martha Ann Gandy deed in trust for the defendant, David P. Cresswell, and an undivided one-third part of such interest so conveyed in trust for the defendant John A. Higgons, and that the said complainant, Ocean City Association, do within thirty days from the date of this decree make, execute and acknowledge in due form of law and deliver to the said defendants, David P. Cresswell and John A. Higgons, a good and sufficient conveyance of such undivided interest as it took under the aforesaid Martha Ann Gandy deed, conveying to each of them an equal undivided one-third part thereof, * * *.
And it is further ordered that the said defendant, Martha Ann Gandy, alias Martha Ann Blakeman, do within thirty days from the date of this decree, make, execute and acknowledge in due form of law and deliver to the defendants, David P. Cresswell and John A. Higgons, and to the said complainant, Ocean City Association, a good and sufficient conveyance of the said premises described in her said agreement first above recited, conveying to each of them an equal undivided one-third part thereof with the usual covenants against encumbrances, and that she deliver at the same time to the said David P. Cresswell, John A. Higgons and the said complainant, Ocean City Association, possession of said premises."
The issues in that case and the case presently before the court are entirely different and the plaintiff is not estopped upon the theory of res adjudicata.
For the reasons above set forth under headings (1) and (2), it is held as well that the depositions in Ocean City Association v. Cresswell are not here admissible.
Judgment will be entered for the plaintiff against defendants Gallagher.
The facts and contentions of the plaintiff and the defendants Johnstone are as follows:
The sole proof of the Johnstone claim, as submitted at the trial, was a deed from Inland Waterway Land Company to Edward L. Johnstone, dated August 8, 1952 and recorded in the office of the Clerk of Cape May County in Book of *338 Deeds 782, page 303. They argue that under one of the descriptions in said deed they obtained title to 174.273 acres, of which approximately 80 acres lies within the outbounds of the land described in the complaint. They further point to an exception contained in the description of the land to which plaintiff seeks to quiet title, which reads as follows:
"Beginning at the side of Corsons Sound opposite a small gut that empties into the Brother Creek and thence running the several courses of said Brother Creek to the mouth where it empties into the middle thoroughfare; thence up the same to Staffords point thence up the same to Corson's Sound; thence along the same to the beginning. Supposed to contain 50 acres more or less."
No proof of the chain of title prior to that obtained by the deed from Inland was submitted by them. The 50 acres so excepted could not be located by plaintiff's engineer, nor was any proof of location offered by the Johnstones. The gist of these defendants' rationalization is, that since the 50-acre exception cannot be located, it must be within the confines of the above referred to 80 acres. As the record stands, plaintiff holds anterior title to the lands claimed by the Johnstones.
The difficulty which these defendants encounter is that they are attempting to cast the burden of proof of title on the plaintiff before they have established their own title.
If the plaintiff establishes the jurisdictional facts above listed, the defendant is called upon affirmatively to set forth and maintain, by proofs, any claim he has in or to the described lands. The plaintiff is not even under any obligation to exhibit his title until the defendant has shown title. That plaintiff has established the jurisdictional facts is not disputed. Toth v. Bigelow, supra. The defendants Johnstone have failed to bear the burden of establishing their title.
Judgment will therefore be entered against the defendants Johnstone.