In the Matter of Ranier E.
WUTTKE, Bankrupt.

Max SHOMER and Sophie
Shomer, Plaintiffs,

v.

Ranier E. WUTTKE, Bankrupt,
Defendant.

Bankruptcy No. B–77–669.

United States Bankruptcy Court,
D. New Jersey.

Jan. 31, 1980.

Matthews, Levin, Shea & Pfeffer, Jackson, N. J., by Steven I. Pfeffer, Jackson, N. J., for plaintiffs.

Neiwirth & Neiwirth, Newark, N. J., by Leo Neiwirth and Ronald G. Neiwirth, Newark, N. J., for bankrupt/defendant.

OPINION

RICHARD W. HILL, Bankruptcy Judge.

This Opinion, hopefully, disposes of the balance of the issues remaining in this litigation wherein the plaintiffs, Max and Sophie Shomer, sought to have an obligation due and owing to them from the bankrupt declared non-dischargeable pursuant to the provisions of Section 17(a)8 of the Bankruptcy Act. Specifically, the Shomers alleged that the bankrupt wilfully and maliciously set fire to and destroyed their home.

At a trial conducted in this matter on February 20, 1979, the Court admitted

into evidence a deposition of the bankrupt conducted in a prior state court case between the parties. The defendant/bankrupt has conceded that the deposition establishes that the fire in question was wilfully and maliciously set. Accordingly, it is clear that the defendant/bankrupt's obligation to the Shomers is non-dischargeable.

Two other issues, however, remain in the case. The bankrupt contends that the Shomers are not the real parties in interest because they were paid in full for the loss by their insurance carrier. By the same token, the Shomers alleged that their loss was not fully compensated and seek to recover from the bankrupt more than that allowed by the insurance carrier. Each issue must be considered separately.

### REAL PARTY IN INTEREST

The facts before the Court on the real party in interest issue are sparse. At the February 20 hearing previously alluded to, the Court advised that it would consider this matter on affidavits in the absence of objections. There have been no objections to the use of an affidavit. By the same token, the affidavit that was submitted has been less than helpful. A letter submitted by plaintiffs' counsel, however, does fill in some of the gaps. For the purpose of this Opinion, the Court will utilize the affidavit and some of the material in plaintiffs' letter.[1]

It appears undisputed that the plaintiffs Max and Sophie Shomer were paid $25,-894.00 by Cambridge Mutual Fire Insurance Company for their loss. What purports to be a dummy copy of the fire insurance policy provides in pertinent part that the Company "may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefore is made by the Company."

There is no evidence in the record as to whether such an assignment was made. However, in his brief plaintiffs' counsel made the following statement:

> After reading the above subrogation provision, plaintiffs, through their attorneys, contacted Cambridge Mutual Fire Insurance Company and worked out an agreement whereby plaintiffs would pursue their action against the defendants, and in return, the insurance company would allow plaintiffs to keep one-half of the monies recovered. This was agreed to by the insurance company and authority was given to the plaintiffs to proceed. A copy of the simulated policy and the letter granting permission to proceed from the insurance company are attached hereto as Exhibits A and B respectively."

Rule 17 of the Federal Rules of Civil Procedure is incorporated into Rule 717 of the Bankruptcy Rules. It provides in pertinent part as follows:

> Every action shall be prosecuted in the name of the real party in interest . . No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time is allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."[2]

The application of Federal Rule of Civil Procedure 17 in the context of a subrogation case was explained in *United States v.*

---

1. There has been no objection raised by the bankrupt. The material in the record on the real party in interest issue was submitted only by plaintiff. Since this issue is a defense, defendant bears the ultimate burden of proof and the risk of an inadequate factual record.

2. The New Jersey rule is different than the federal rule in that it permits an action to be prosecuted in the name of the real party in interest, but does not require it. See N.J.R.R. 4:26–1. The New Jersey Courts have construed that Rule to permit prosecution of a subrogation case, in the context of a fire insurance loss, by the insurer. *See Board of Education v. Kane Acoustical Co. Inc.*, 51 N.J.Super. 319, 328, 143 A.2d 853 (App.Div.1958). The *Kane* court relied in this regard on *Standard Accident Insurance Co. v. Pellecchia*, 15 N.J. 162, 104 A.2d 288 (1954). *See* 51 N.J.Super. at 328, 143 A.2d 853.

*Aetna Casualty & Surety Co.*, 338 U.S. 366, 380–382, 70 S.Ct. 207, 215–216, 94 L.Ed. 171 (1949). There the Supreme Court indicated that if the subrogee had paid the entire loss, it was the only real party in interest and must sue in its own name. In cases of partial subrogation, however, there were two real parties in interest, and each could prosecute the action. A defendant, however, could compel the joinder of the other party.

In determining whether a party should be joined, the history of Rule 17 should be kept in mind. In its origin, Rule 17 was permissive, that is, it permitted the real party in interest to be a party where the common law might have required some other person to sue. Under current practice, however, the function of the Rule is negative. It is to protect a defendant "against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." *Southern National Bank of Houston, Texas v. Tri Financial Corp.*, 317 F.Supp. 1173, 1187 (S.D.Texas 1970).

In the instant case it would appear that there are two real parties—the plaintiffs and the insurance carrier. Pursuant to the *Aetna* decision, the defendant can compel the joinder of Cambridge or its acquiescence in the lawsuit brought solely by the Shomers.

■ The letter of authorization from the insurance carrier in the instant case is dated well prior to the filing of the bankruptcy, and, therefore, cannot be considered a ratification. To settle this matter once and for all, the Court will direct Cambridge Mutual to file with this Court, within 45 days of the date of this Opinion, a letter ratifying the conduct of this litigation on its behalf by the Shomers.

## COLLATERAL ESTOPPEL

The more troublesome issue is the contention by the defendant/bankrupt that any liability of the bankrupt is limited to the amount of the judgment entered against the bankrupt in the Superior Court of New Jersey—$25,894.00. The plaintiffs have alleged that their actual damages were substantially greater than the amount recovered from the insurance carrier and in the Superior Court.

■ The defendant/bankrupt appeared in the state court action. Apparently, judgment was entered against him by motion. The judgment itself is in evidence. At the trial, plaintiff sought to utilize the concepts of collateral estoppel and res judicata for the purpose of entering judgment against the bankrupt. A fatal defect, however, in the plaintiffs' effort was their failure to supply sufficient documentation as to the basis for the entry of the state court judgment. There was nothing before the Court to permit a finding that the judgment was based on wilful and malicious conduct by the bankrupt. In fact, the complaint filed in the state court, in the second count, specifically alleges negligence as the cause of action, although count one alleged a wilful and malicious tort. In the absence of evidence as to the basis of the state court decision, the mere entry of a judgment could not establish the liability of the bankrupt under Section 17(a)8.

The bankrupt's claim based on collateral estoppel is somewhat different, however. His argument is that there was litigation between the plaintiff and the defendant in the state court. A judgment was entered resolving the issues between the parties and fixing the amount of defendant's liability. He alleges that under appropriate collateral estoppel principles the damages in this case should be limited to the amount recovered in the state court. Certainly, in the state court action, based either on negligence or a willful tort, the Shomers had every interest in seeking a judgment in excess of the amount awarded by the insurance carrier. If in fact they were underinsured, they would have had every right to seek additional damages. Accordingly, the Court is satisfied that there is nothing peculiar about the bankruptcy proceedings which should or would inspire a different damage result or a more favorable damage result to the Shomers than they received in the state court.

The Third Circuit has addressed the collateral estoppel question in the bankruptcy context. *See In re McMillan,* 579 F.2d 289 (3d Cir. 1978). Relying on the Restatement of Judgments Section 68(1), the Court there declined to apply the concept of collateral estoppel because the judgment in question was a default judgment. 579 F.2d at 292, 293. The Restatement provides in pertinent part as follows:

> "Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action . . ." *Restatement of Judgments,* Sections 68(1) (1942).

In the instant case all the criteria for application of collateral estoppel apply. The issue of damages, an essential issue, was litigated, albeit by motion. There was a conclusive final judgment specifying the damages. There is no reason to relitigate that issue.

Subject to the filing of the letter of ratification, a judgment will be entered in favor of the plaintiffs and against the defendants for $25,894.00.