**In the Matter of Jesse E. HAWKINS, Debtor.**

**William A. Mattson, Plaintiff,**

**v.**

**Jesse E. Hawkins, Defendant.**

**No. Civ.A. 98–1499 MLC.**

United States District Court, D. New Jersey.

Feb. 10, 1999.

David A. Gies, West Trenton, NJ, for plaintiff.

Martin John Jennings, Jr., Martinez & Jennings, West Trenton, NJ, for defendant.

### OPINION

WOLFSON, United States Magistrate Judge.

Plaintiff-creditor, William A. Mattson ("Mattson"), has moved for summary judgment in connection with his claim that a state court default judgment he obtained against Jesse E. Hawkins ("Hawkins"), defendant-debtor, in the amount of $750,115.62, is a non-dischargeable debt of Hawkins. Pursuant to an order of the Bankruptcy Court, this adversary proceeding by Mattson against Hawkins to determine the dischargeability of the judgment debt was transferred to the United States District Court. The parties have consented to the jurisdiction of a United States Magistrate Judge, pursuant to 28 U.S.C. (a) § 636(c), and FED.R.CIV.P. 73, all matters relating to this adversary proceeding. The Court, having reviewed the moving and opposition papers, and having heard oral argument from counsel on December 21, 1998, denies plaintiff-creditor's motion for summary judgment. Furthermore, the Court finds that the parties do not have a Seventh Amendment right to a jury trial in this non-dischargeability proceeding.

### Factual Background

The genesis of this litigation was a fisticuffs between Mattson and Hawkins. Although the parties disagree as to some of the circumstances surrounding their altercation, the following facts are undisputed. Mattson and Hawkins were both senior corrections officers employed by the State of New Jer-

sey Department of Corrections and assigned to the Albert C. Wagner Youth Correctional Facility (hereinafter "Correctional Facility"). *See Certification of David A. Gies, Esq. dated September 21, 1998,* (hereinafter *"Gies Cert."*), Exhibit A (Complaint filed in the Superior Court of New Jersey on August 14, 1995) at pp. 1–2. On October 14, 1993, at approximately 12:50 p.m., a fight broke out between Mattson and Hawkins while the two men were on duty at the Correctional Facility. *See Gies Cert.,* Exhibit A at p. 2; *Gies Cert.,* Exhibit I (Transcript of Proof Hearing in Superior Court of New Jersey dated October 25, 1996) at p. 3. As a result of the fight, Mattson sustained physical injuries.[1]

On August 14, 1995, Mattson filed a civil action in the Superior Court of New Jersey against Hawkins and the State of New Jersey Department of Corrections alleging that Hawkins attacked and struck him "without cause or provocation, intentionally, wrongfully and without justification...."[2] *Gies Cert.,* Exhibit A at p. 2. Service of the summons and complaint was made upon Hawkins at the Correctional Facility on September 7, 1995, by the Burlington County Sheriff's Department. However, Hawkins failed to answer or otherwise respond to the complaint, and default was entered on November 27, 1995. Subsequently, on March 18, 1996, the state court entered a default judgment against Hawkins as to liability.

On October 25, 1996, a proof hearing was held before the Honorable Ronald E. Bookbinder, J.S.C. to establish the amount of the judgment. Notwithstanding Mattson's service of notice of the proof hearing on Hawkins, Hawkins failed to appear at the hearing. *See Gies Cert.,* Exhibit D (Proof of Service dated September 11, 1996). During the proceeding, Mattson responded in the affirmative when his attorney, David A. Gies, Esq., asked whether Hawkins "hit [him] about [his] head and face."[3] *See Gies Cert.,*

---

1. At the state court proof hearing, plaintiff testified that as a result of the altercation he sustained various injuries to his face and head. *Gies Cert.,* Exhibit I at pp. 4–6. Plaintiff further testified that he missed over six months of work due to these injuries. *See id.*

2. The State of New Jersey subsequently filed a motion for summary judgment which was granted in its favor on June 21, 1996.

3. Q And you stated in your complaint that Mr. Hawkins, who was a co-employee of you [sic] while working for the State of New Jersey, hit you about your head and face.

Exhibit I at p. 3. Mattson failed to present the court with any further testimony as to the cause or circumstances of the fight. The remainder of the hearing transcript deals with Mattson's detailed account of the various injuries and treatment he sustained as a result of the fisticuffs.[4] *See id.* at pp. 4–11. After reviewing the expert reports, the court concluded the hearing by finding that Mattson sustained $750,000 in damages.[5] *See id.* at pp. 11–12. However, the court never addressed the merits of Mattson's intentional tort claim.

On November 6, 1996, Judge Bookbinder entered an order awarding Mattson a judgment of $750,000 plus $152.16 in court costs, for a total judgment of $750,152.16. Subsequent to the entry of the order, Mattson began to garnish ten percent (10%) of Hawkins' weekly earnings. *See Gies Cert.*, Exhibit H (Order for Wage Execution and Certification dated February 13, 1997).

On September 17, 1997, Hawkins filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. In response, Mattson filed an adversary proceeding against Hawkins in the Bankruptcy Court on November 25, 1997. Mattson sought to have his state court default judgment against Hawkins declared non-dischargeable pursuant to section 523(a)(6) of the Bankruptcy Code. Mattson contended that Hawkins' act of striking him was "willful and malicious." 11 U.S.C.A. § 523(a)(6) (1993). However, on March 12, 1998, the Honorable Stephen A. Stripp, U.S.B.J., memorialized an oral ruling by issuing a Letter Opinion which held that pursuant to 28 U.S.C.A. § 157(b)(5)[6], the Bankruptcy Court lacked subject matter jurisdiction to determine Mattson's underlying personal injury tort claim. *See Letter Opinion dated March 12, 1998.* In dictum, Judge Stripp opined that neither the doctrine of collateral estoppel nor the doctrine of res judicata bars the bankruptcy court from determining claims and issues in dischargeability proceedings in cases where there has been a prior entry of default judgment against the debtor. *See id.* (citing *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *In re McMillan,* 579 F.2d 289 (3d Cir.1978)).

Following Judge Stripp's instructions, a motion pursuant to 28 U.S.C.A. § 157(d) was filed, and the adversary proceeding was withdrawn to the United States District Court for the District of New Jersey. By Order filed on November 17, 1998, the parties consented to trial by a United States Magistrate Judge.

The factual circumstances surrounding the cause of the fight between Mattson and Hawkins on that fateful day are contested by both parties. As is averred in his state court complaint, Mattson claims that Hawkins wrongfully and intentionally attacked him. Furthermore, Mattson asserts that Hawkins' attack was without cause, excuse, justification, or provocation. Hawkins, on the other hand, alleges that Mattson, provoked a response by making a derogatory statement to Hawkins concerning Hawkins' race by using the term "Nigger." Hawkins asserts that he confronted Mattson after Mattson uttered

---

A Yes.
*Gies Cert.*, Exhibit I at p. 3.

4. In addition to his testimony, Mattson submitted to the court two expert reports written by doctors who examined him in 1994. *See Gies Cert.*, Exhibit I at p. 6. The reports state the type and extent of the injuries Mattson sustained as a result of the fight. *See Gies Cert.* at F (Expert Medical Report prepared by David Weiss, D.O. and dated June 5, 1994) & G (Expert Medical Report prepared by Adnan B. Zawawi, M.D. and dated December 2, 1994). The reports diagnose Mattson with, *inter alia,* a hemi LeFort I fracture of the right side of his facial bones, a cerebral concussion, post-concussive syndrome, and right facial pain syndrome. *See id.*

5. During the proof hearing, Mr. Gies suggested a $1,000,000 judgment. *See Gies Cert.*, Exhibit I at p. 6.

6. Section 157(b)(5) provides:

The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C.A. § 157(b)(5) (1993).

the racial slur, and that their altercation ensued subsequent to this confrontation.[7]

Arguing that the claims and issues in the instant adversary proceeding are identical to those established by the prior state court default judgment, Mattson makes the present motion for summary judgment. Specifically, Mattson contends that the state court proceeding established that Hawkins' act of striking Mattson during their altercation was willful and malicious. Therefore, Mattson asserts that the doctrines of res judicata and collateral estoppel along with the entire controversy doctrine preclude Hawkins from relitigating whether his actions were "willful and malicious" as defined by 11 U.S.C.A. § 523(a)(6). Such a finding would make Hawkins' debt to Mattson non-dischargeable.

In response, Hawkins raises a factual issue by claiming that Mattson's use of a racial slur provoked the attack. Hawkins further argues that the default judgment has no preclusive effect under either res judicata or the entire controversy doctrine because the merits of the instant dischargeability claim were not addressed by the state court, insofar as the state court never determined whether his acts were willful and malicious. Additionally, Hawkins notes that the doctrine of collateral estoppel does not bar the instant litigation because the entry of the default judgment by the state court prevented the parties from "actually litigating" the dischargeability issue.[8]

### *Discussion*

#### I. Summary Judgment

Federal Rule of Civil Procedure 56 empowers a court to enter summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied this initial burden, the opposing party must establish that a genuine issue exists. *See Jersey Central Power & Light Co. v. Lacey Township,* 772 F.2d 1103, 1109 (3d Cir.1985), *cert. denied,* 475 U.S. 1013, 106 S.Ct. 1190, 89 L.Ed.2d 305 (1986). Not every issue of fact will be sufficient to defeat a motion for summary judgment; issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, the opposing party cannot rest upon mere allegations; it must present actual evidence that creates a genuine issue of material fact. *See id.* at 249, 106 S.Ct. 2505 (citing *First Nat'l Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The court must draw all reasonable inferences in the opposing party's favor, and must accept the party's evidence when considering the merits of the summary judgment motion. *See Pollock v. American Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986).

■ Mattson has provided this Court with copies of the state court complaint and the transcript of the October 25, 1996 proof hearing. Hawkins does not attack the authenticity of these documents. Instead, Hawkins contests the preclusive effect of the pre-petition state court default judgment on the subsequent dischargeability proceeding.[9]

---

**7.** The Court notes that Hawkins failed to provide any sworn testimony whatsoever. This information was made available to the Court by way of the opposition brief submitted by counsel on behalf of Hawkins, pp. 1–2, as well as defense counsel's contentions at oral argument on December 21, 1998.

**8.** Hawkins does not contest the preclusive effect of the judgment debt or the amount of the judgment, $750,152.16. Thus, this Court will recognize the state court's finding as to that amount.

**9.** Mattson's legal argument centers on the preclusive effect of the default judgment entered by the Superior Court of New Jersey. If, however, there is no preclusive effect, then the Court would have to determine whether there is a material issue of fact which would require the Court to deny Mattson's motion for summary judgment. *See In re Rubitschung,* 103 B.R. 1010, 1011–12 (Bankr.C.D.Ill.1988) (holding that existence of a genuine issue of material fact as to the circumstances which caused a fight between the plaintiff-creditor and the defendant-debtor precluded plaintiff-creditor's motion for summary judgment as to the § 523(a)(6) non-dischargeability of his state court default judgment). The parties would then have to proceed to trial on the issue of whether Mattson's judgment debt is non-dischargeable pursuant to 11 U.S.C.A. § 523(a)(6).

Here, Hawkins has asserted that there is an issue of material fact by claiming that the fight

Thus, it is incumbent upon Mattson to carry the burden of demonstrating that the requirements of res judicata, collateral estoppel, and the entire controversy doctrine have been satisfied. *See Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

## II. Section 523(a)(6) of the Bankruptcy Code

Section 727(a) of the Bankruptcy Code provides that "[t]he court shall grant the debtor a discharge" except for certain enumerated situations where the debtor would be precluded from having his/her debts discharged. 11 U.S.C.A. § 727(a) (1993). The Code goes on to instruct that "[e]xcept as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter...." 11 U.S.C.A. § 727(b) (1993). Section 523 of the Bankruptcy Code states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

The Third Circuit in *In re Conte*, 33 F.3d 303, 305 (3d Cir.1994), defined an injury as willful and malicious when the actor purposefully inflicts the injury or acts in such a manner that he is substantially certain that injury will result. The United States Supreme Court recently elaborated on this definition by holding that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that non-dischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998). Negligence or recklessness is not sufficient to establish

that a resulting injury is willful and malicious. *See id.*, 523 U.S. 57, 118 S.Ct. at 978. In general, intentional torts require that the tort-feasor contemplate the repercussions of his act, not simply the act itself. *See* Restatement (Second) of Torts § 8A, cmt. a (1964).

The standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a), including that for willful and malicious activities causing injury, is the preponderance-of-the-evidence standard. *See In re Branam*, 226 B.R. 45, 52 (9th Cir. BAP 1998); *Grogan*, 498 U.S. at 291, 111 S.Ct. 654; *In re Cohn*, 54 F.3d 1108 (3d Cir.1995). Thus, Mattson must prove that it is more likely than not that Hawkins' acts were willful and malicious as defined by the Bankruptcy Code. Furthermore, courts must narrowly construe the discharge exceptions in Section 523(a) in favor of the debtor given that the underlying policy of the Code is to afford the debtor a "fresh start." *In re Miller*, 156 F.3d 598, 602 (5th Cir.1998).

## III. The Preclusive Effect of the State Court Default Judgment

The ultimate question this Court must determine is whether a default judgment obtained in the state court, where the defendant-debtor failed to defend his case in any way, has a preclusive effect on a subsequent federal proceeding where the dischargeability of the judgment debt is at issue. This determination begins with the Full Faith and Credit Statute which provides that the judicial proceedings of any state court "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C.A. § 1738 (1994).

In *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), the United States Supreme Court was asked to determine the preclusive effect, if any, of a state

was the result of Mattson's provocation. This issue of fact impacts whether Hawkins' act of striking Mattson was willful and malicious as defined by 11 U.S.C.A. § 523(a)(6). For the purposes of this motion, the Court assumes that Mattson continues to allege that the altercation was not provoked. *See Gies Cert.*, Exhibit I at p. 2.

court judgment on a federal antitrust claim which could not have been raised in the state court proceedings. Delivering the majority opinion of the Court, Justice O'Connor held that under the Full Faith and Credit Statute federal courts must first look to the law of the state where the judgment was rendered in order to determine the judgment's preclusive effect on subsequent federal proceedings. *See id.* at 375, 105 S.Ct. 1327. Justice O'Connor reiterated that:

'It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken.'

*Id.* at 380, 105 S.Ct. 1327 (quoting *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 481–82, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)).

Accordingly, this Court must consult New Jersey law to determine whether a state court default judgment has a preclusive effect on subsequent federal proceedings where the dischargeability of the debt is at issue. *See id.* at 375, 105 S.Ct. 1327; *see also In re Crispino,* 160 B.R. 749, 752–53 (Bankr.D.N.J.1993) (using New Jersey law of res judicata, collateral estoppel and the entire controversy doctrine to determine the preclusive effects of a state default judgment in a dischargeability proceeding held in bankruptcy court). Mattson argues that the doctrines of res judicata, collateral estoppel, and the entire controversy all act as a bar here. The Court shall examine each of the aforementioned doctrines and their applicability to the facts and circumstances at hand.

## A. Res Judicata or Claim Preclusion

Under New Jersey law, the doctrine of res judicata precludes parties, or their privies, from re-litigating claims or defenses which were available to the parties in a prior proceeding. *See Velasquez v. Franz,* 123 N.J. 498, 505, 589 A.2d 143 (1991). "The doctrine of *res judicata* 'contemplates that when a controversy between parties is once fairly litigated and determined it is no longer open to litigation.'" *Culver v. Insurance*

*Company of North America,* 115 N.J. 451, 460, 559 A.2d 400 (1989) (quoting *Lubliner v. Board of Alcoholic Beverage Control,* 33 N.J. 428, 435, 165 A.2d 163 (1960)). The policies supporting this doctrine are patent. "Res judicata ... encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

Both New Jersey and federal law apply res judicata or claim preclusion when three circumstances are present:

(1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.

*Hulmes v. Honda Motor Co.,* 924 F.Supp. 673, 682 n. 12 (D.N.J.1996) (quoting *Watkins v. Resorts Int'l Hotel and Casino, Inc.,* 124 N.J. 398, 412, 591 A.2d 592 (1991)). To determine whether the claim or defense in the subsequent proceeding derives from the same transaction as the claim or defense in the prior proceeding as required by the third prong of the above test, New Jersey courts consider the following four factors:

(1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions) ...; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first) ...; and (4) whether the *material* facts alleged are the same.

*Culver,* 115 N.J. at 461–62, 559 A.2d 400 (citations omitted).

It is black letter law in this State that a default judgment is a final judgment which bars all further litigation. *See In re Crispino,* 160 B.R. 749, 755 (Bankr.D.N.J. 1993); *Evangel Baptist Church v. Chambers,* 96 N.J.Super. 367, 370–71, 233 A.2d 82 (Ch. Div.1967). "It is quite true that a judgment

by default is just as conclusive an adjudication between parties of whatever is essential to support the judgment as one rendered after answer and contest." *Girard Trust Co. v. McGeorge,* 128 N.J.Eq. 91, 101, 15 A.2d 206 (Ch.1940). New Jersey courts have consistently applied the doctrine of res judicata to default judgments. *See, e.g., Evangel Baptist Church,* 96 N.J.Super. at 370–71, 233 A.2d 82 ("I have found no authority indicating that a default judgment, properly entered, has any less binding effect upon possible future interests in land than a judgment entered in a contested matter."); *Girard Trust,* 128 N.J.Eq. at 101, 15 A.2d 206; *Phillips v. Phillips,* 118 N.J.Eq. 189, 192, 178 A. 265 (Ch.1935), *rev'd on other grounds,* 119 N.J.Eq. 462, 183 A. 220, (1936); *Riverside Apartment Corp. v. Capitol Constr. Co.,* 107 N.J.Eq. 405, 415, 152 A. 763 (Ch.1930).

In fact, the bankruptcy court in *Crispino,* 160 B.R. at 755–56, applied res judicata in a dischargeability proceeding by giving a prior state court default judgment a claim preclusion effect.[10] In *Crispino,* plaintiff-creditor obtained a default judgment against defendant-debtor in a New Jersey state court, and defendant-debtor subsequently filed for bankruptcy. Defendant-debtor then filed an adversary proceeding in bankruptcy court to determine the validity of an alleged oral agreement in which the plaintiff-creditor agreed to accept defendant-debtor's late mortgage payments. In response, creditor-plaintiff filed a motion for summary judgment to have the debt declared non-dischargeable. *See id.* at 751. The court ruled that res judicata, collateral estoppel, and the entire controversy doctrine barred debtor from raising the contract issue because it had already been determined in the prior state court proceeding. *See id.* at 757.

The factual circumstances and procedural posture of the instant motion differ substantially from those presented by *Crispino.* In the case at hand, the plaintiff-creditor, not the defendant-debtor, initiated the adversary proceedings in the bankruptcy court. Unlike *Crispino,* the underlying issue of the adversary proceeding in the present case does not concern the validity of the debt. Hawkins does not contest the preclusive effect of the judgment debt or the amount of the judgment, $750,152.16. The basis of the instant proceeding is simply to determine whether Mattson's valid judgment against Hawkins is dischargeable pursuant to the Bankruptcy Code.

Notwithstanding New Jersey's rule of applying the res judicata doctrine to default judgments, the United States Supreme Court has recognized that the Bankruptcy Code contains an exception to the Full Faith and Credit statute in the context of the dischargeability of debts. *See Brown,* 442 U.S. at 135–36, 99 S.Ct. 2205. In *Brown,* the Supreme Court dealt with the res judicata effect of a state court judgment on a subsequent bankruptcy proceeding where the dischargeability of a debt under Section 17 of the Bankruptcy Act was at issue.[11] *See id.* at 128–29, 99 S.Ct. 2205. Writing for a unanimous Court, Justice Blackmun warned of the implicit dangers associated with applying res judicata:

> Because res judicata may govern grounds and defenses not previously litigated, however, it blockades unexplored paths that may lead to truth. For the sake of repose, res judicata shields the fraud and the cheat

---

10. In addition, the *Crispino* court ruled that the default judgment barred any additional claims pursuant to collateral estoppel and the New Jersey entire controversy doctrine. *See Crispino,* 160 B.R. at 757.

11. The Court stated:
> Section 14 of the Act, 11 U.S.C. § 32, specifies that a debtor may not obtain a discharge if he has committed certain crimes or offenses. Section 17a, the focus of this case, provides that certain types of debts are not affected by a discharge. These include, under § 17a(2), 'liabilities for obtaining money or property by false pretenses or false representations ... or

> for willful and malicious conversion of the property of another' and under § 17a(4), debts that 'were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity.'
>
> *Brown,* 442 U.S. at 128–29, 99 S.Ct. 2205. The Supreme Court felt it necessary to note that in 1978 Congress repealed the Bankruptcy Act. Interestingly, the Court instructed that the provisions of Section 17 of the Bankruptcy Act would be "substantially similar" to those found in Section 523 of the new Bankruptcy Code. *Id.* at 129 n. 1, 99 S.Ct. 2205.

as well as the honest person. It therefore is to be invoked only after careful inquiry.

*Id.* at 132, 99 S.Ct. 2205. Justice Blackmun observed that applying res judicata to bankruptcy proceedings may undercut Congress' intention to have bankruptcy courts resolve dischargeability issues. *See id.* at 134, 99 S.Ct. 2205 (citing *In re Pigge,* 539 F.2d 369, 371–72 (4th Cir.1976)). The Court went on to reject the notion that res judicata applied to the underlying circumstances of the case and held that:

> [T]he bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of [a party's] debt.

*Id.* at 138, 99 S.Ct. 2205. In other words, pursuant to 11 U.S.C.A. § 523(c), United States Bankruptcy Courts have the "exclusive jurisdiction" to determine the dischargeability of a debt. *See id.* at 136–38, 99 S.Ct. 2205. Thus, a pre-petition state court judgment does not have a res judicata effect on a subsequent dischargeability proceeding in bankruptcy court. *See id. See also In re Reeck,* 167 B.R. 93, 97 (Bankr.N.D.Ohio 1994) (stating that pursuant to *Brown* "res judicata is not available as a defense in dischargeability proceedings."); *In re Cobley,* 89 B.R. 446, 447–48 (Bankr.E.D.Pa.1988) ("As the Supreme Court noted in Brown ... the concept of claim preclusion (res judicata) does not apply in dischargeability proceedings in bankruptcy."); *In re Moccio,* 41 B.R. 268, 271 (Bankr.D.N.J.1984) ("the Supreme Court held in Brown [that] a pre-petition determination of liability does not have res judicata effect in a non-dischargeability action....").

■ Accordingly, pursuant to *Brown* and its progeny, the default judgment entered by the New Jersey state court in the present case has absolutely no claim preclusion effect on these dischargeability proceedings. *See id.* Here, the default judgment merely established the existence of the debt. The state court did not, nor could it, declare the debt to be non-dischargeable pursuant to § 523(a)(6) or any other bankruptcy provision. Thus, Mattson's motion for summary judgment must be denied on this ground.

**B. Collateral Estoppel or Issue Preclusion**

■ "[T]he difference between res judicata and collateral estoppel is that res judicata forecloses all issues that could have been litigated previously, while 'collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit.'" *In re Lucas,* 186 B.R. 67, 69 (Bankr.E.D.Va. 1995) (quoting *Brown,* 442 U.S. at 139, n. 10, 99 S.Ct. 2205). For collateral estoppel, or issue preclusion, to apply, New Jersey courts require that the party asserting the doctrine show that:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was *actually litigated* in the proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*Wildoner v. Borough of Ramsey,* 316 N.J.Super. 487, 506, 720 A.2d 645 (App.Div.1998) (citing *In re Dawson,* 136 N.J. 1, 20, 641 A.2d 1026 (1994)) (Emphasis added). The court in *In re Himowitz* set out the proper procedure for determining whether collateral estoppel applies in a bankruptcy setting:

> A determination of whether the [collateral estoppel] standards are met should be made in the first instance by the bankruptcy judge after a careful review of the record of the prior case, a hearing at which the parties have the opportunity to offer evidence, and the making of findings of fact and conclusions of law.

162 B.R. 109, 112 (Bankr.D.N.J.1993) (citing *Haize v. Hanover Ins. Co.,* 536 F.2d 576, 579 (3d Cir.1976)).

■ Pursuant to New Jersey law, collateral estoppel does not apply to default judgments because such judgments are not *"actually litigated"* as required by the second prong in the above test. *See, e.g., Slowinski v. Valley Nat. Bank,* 264 N.J.Super. 172, 183, 624 A.2d 85 (App.Div.1993); *N.M. v. J.G.,* 255 N.J.Super. 423, 605 A.2d 709 (App.Div. 1992). This same rule applies in United

States Bankruptcy Courts. *See In re Cobley*, 89 B.R. 446, 448 (Bankr.E.D.Pa.1988) (citing *In re McMillan*, 579 F.2d 289 (3rd Cir. 1978))[12]; *see also In re Wuttke*, 2 B.R. 362, 365 (Bankr.D.N.J.1980); *In re Lucas*, 186 B.R. 67, 69 (Bankr.E.D.Va.1995).

■ In the case at bar, a default judgment was entered on behalf of Mattson because Hawkins failed to answer or otherwise respond to the state court pleadings. The parties have never actually litigated the issue of whether Hawkins' acts were willful and malicious. Moreover, the meager testimony provided by Mattson at the proof hearing on October 25, 1996, regarding the altercation with Hawkins, is not sufficient to constitute actual litigation because Hawkins was not present during those proceedings. *See supra*, at pp. 225–26. The Court must reach this conclusion albeit Hawkins received notice of the hearing and chose to absent himself from the proceeding. Given that New Jersey and federal law require that the issue be actually litigated for collateral estoppel to apply, Mattson cannot invoke the doctrine to preclude Hawkins from presenting evidence on the dischargeability issue in this proceeding. Thus, Mattson's motion for summary judgment must also be denied on this ground.

### C. The Entire Controversy Doctrine

■ The New Jersey Supreme Court has declared that the entire controversy doctrine " 'requires parties to a controversy before a court to assert all claims known to them that stem from the same transactional facts, even those against different parties.' " *Harley Davidson Motor Co. v. Advance Die Casting, Inc.*, 150 N.J. 489, 497, 696 A.2d 666 (1997) (quoting *Joel v. Morrocco*, 147 N.J. 546, 548, 688 A.2d 1036 (1997)). A party must join all claims which "arise[ ] from a core set of related factual circumstances" in a single action. *DiTrolio v. Antiles*, 142 N.J. 253, 272, 662 A.2d 494 (1995). The doctrine pertains to " 'virtually all causes, claims, and defenses relating to a controversy.' " *Oliver*

*v. Ambrose*, 152 N.J. 383, 394, 705 A.2d 742 (1998) (quoting *Cogdell v. Hospital Ctr. at Orange*, 116 N.J. 7, 16, 560 A.2d 1169 (1989)). Failure to join a claim or party as required by the entire controversy doctrine "shall result in the preclusion of the claims to the extent required by the entire controversy doctrine . . . ." *Id.* (quoting N.J.R. COURT 4:30A).

■ New Jersey courts have held that the entire controversy doctrine, like res judicata, is fully applicable to default judgments. *See, e.g., Mori v. Hartz Mountain Development Corp.*, 193 N.J.Super. 47, 55, 472 A.2d 150 (App.Div.1983). However, a party will not be barred from raising additional claims in a subsequent proceeding if he was unable to assert these claims in the initial proceeding. *See Harley Davidson*, 150 N.J. at 494, 696 A.2d 666. For example, the party may have been barred from raising the claim because the court in the prior proceeding lacked jurisdiction over the claim. *See Watkins v. Resorts Intern. Hotel & Casino*, 124 N.J. 398, 413, 591 A.2d 592 (1991) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 25 cmt. E (1982)) (instructing that if " 'the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground . . . then a second action in a competent court presenting the omitted theory or ground should be held not precluded.' "). Another such situation arises when the claims are either " 'unknown, unarisen, or unaccrued at the time of the original action.' " *Harley Davidson*, 150 N.J. at 494, 696 A.2d 666 (quoting *Mystic Isle Dev. Corp. v. Perskie & Nehmad*, 142 N.J. 310, 323, 662 A.2d 523 (1995)).

■ Applying these well-established principles of New Jersey jurisprudence to the facts presented by the instant case, it is clear that the entire controversy doctrine does not preclude Hawkins from asserting that his judgment debt is dischargeable. The New Jersey state court proceeding dealt exclusively with the issue of whether plaintiff-creditor suffered injuries due to defen-

---

**12.** In his letter opinion dated March 12, 1998, Judge Stripp discussed the *McMillian* case and noted that "collateral estoppel cannot be applied to findings which underlie state court judgments, because in such cases the requirement that the prior matter was 'actually litigated' for purposes of collateral estoppel is not satisfied."

dant-debtor's actions. The issue of whether Hawkins' actions during the altercation constituted willful and malicious acts as defined by Section 523(a)(6) of the Bankruptcy Code was "'unknown, unarisen, or unaccrued at the time of the original action.'" *Id.* Hawkins voluntarily filed for Chapter 7 bankruptcy protection months subsequent to the entry of the default judgment against him. Thus, the state court neither had reason to deal with the dischargeability of the debt at issue, nor did it have jurisdiction to do so. *See Brown,* 442 U.S. at 127, 99 S.Ct. 2205 (holding that the bankruptcy courts, as compared to state courts, have "exclusive jurisdiction" to determine issues of dischargeability under the Bankruptcy Code). Given these findings, the Court must deny Mattson's motion for summary judgment on this ground as well.

### IV. Review of the Record

Having concluded that pursuant to New Jersey law the state court default judgment in the present case has no preclusive effect under the res judicata, collateral estoppel, or entire controversy doctrines on the issues of the dischargeability of that debt, this Court must now review the state court record to determine whether Hawkins willfully and maliciously injured Mattson during their October 14, 1993 fight. *See, e.g., In re Howcroft,* 223 B.R. 845, 849 (Bankr.D.N.H. 1998) (upon reviewing the record in its entirety, the court held that the debt at issue was the result of debtor's willful and malicious acts); *In re Cobley,* 89 B.R. 446, 452–53 (Bankr.E.D.Pa.1988) (analyzing testimony from both a proof hearing and a post-petition deposition to hold that debt was non-dischargeable pursuant to 11 U.S.C.A. § 523(a)(6)); *In re Moccio,* 41 B.R. 268, 272–73 (Bankr.D.N.J.1984) (after determining that the state court default judgment at issue had no preclusive effect on the current bankruptcy proceedings, the bankruptcy court evaluated the evidence found in the record to determine that debtor's act of assaulting the creditor constituted a willful and malicious act). This Court is not, however, confined to a review of the state court judgment and

record. *See Brown,* 442 U.S. at 138–39, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). Nonetheless, since the parties have not provided any other evidence to this Court, the state court proceedings are the only bases for addressing dischargeability.

The facts and procedural history of the *Moccio* case are strikingly similar to those presented in the instant case. *See Moccio,* 41 B.R. at 269–71 In *Moccio,* defendant-debtor assaulted the plaintiff-creditor during a fist-fight in a parking lot outside of a bar. Criminal charges were brought against defendant-debtor, and after a trial he was found guilty of simple assault and battery in municipal court.[13] *See id.* at 271. At the municipal court proceeding, both parties provided extensive testimony as to their version of the facts surrounding the altercation. A civil proceeding was also filed against defendant-debtor in state court, and a default judgment in the amount of $21,170.71 plus costs was entered against him after he failed to answer plaintiff-creditor's interrogatories. Defendant-debtor then filed a Chapter 7 petition for bankruptcy. In response, plaintiff-creditor filed a complaint to have the judgment declared non-dischargeable pursuant to section 523(a)(6). *See id.* at 270–71.

After determining that the doctrines of res judicata and collateral estoppel did not apply to the default judgment, the bankruptcy court turned its attention to the record in order to determine whether defendant-debtor acted willfully and maliciously when he assaulted plaintiff-creditor during their fisticuffs. *See id.* at 271–73. In its *de novo* review of the record, the court stated that "[t]his proceeding is primarily a contest of credibility between the Plaintiff and the Debtor, the testimony is therefore [to be] reviewed at length." *Id.* at 273. The court then reviewed the extensive testimony given by both parties at the municipal court criminal trial and weighed the credibility of each party's version of the story. Based on the municipal court transcript, the court determined that plaintiff-creditor's version of the facts were "much closer to the truth than the

---

**13.** For undisclosed reasons, the conviction was later reversed by the county court. *See Moccio,* 41 B.R. at 271.

Debtor's" and as a result found that defendant-debtor's acts were willful and malicious. Thus, the court held that the debt at issue was non-dischargeable pursuant to section 523(a)(6). *See id.* at 275–76. *See also Howcroft,* 223 B.R. at 848–49 (finding that the record, consisting of defendant's testimony at his criminal trial and the subsequent settlement in the state court civil litigation, provided enough information upon which the court was able to unequivocally determine that defendant's acts were willful and malicious).

Unlike the extensive testimony provided to the courts in *Moccio* and *Howcroft,* the testimony and other evidence provided by the parties to the Court in this case is scant at best. The record here consists primarily of the state court complaint and the transcript of the proof hearing held on October 25, 1996. Despite the general inadequacy of the record, the Court has reviewed the factual assertions made in both the complaint and the proof hearing. In the complaint, Mattson avers that Hawkins struck him "without cause or provocation, intentionally, wrongfully and without justification...." During the proof hearing, Mattson testified that Hawkins "hit [him] about [his] head and face." The testimony regarding the factual circumstances surrounding the altercation ended here. The remainder of the transcript deals exclusively with the severity of Mattson's injuries and the court's award. Mattson's testimony fails to provide any other details, and Hawkins has not, as of yet, provided any sworn testimony whatsoever concerning the fight. The nature of events, if any, which prompted Hawkins to confront Mattson and

inflict serious bodily injury remain a mystery to this Court.

In light of the paucity of evidence presented, this Court must deny Mattson's application for summary judgment. The record fails to demonstrate by a preponderance-of-the-evidence that Hawkins' actions during the October 14, 1993, fight were "willful and malicious" as defined by 11 U.S.C.A. § 523(a)(6). *See Conte,* 33 F.3d at 305 ("An injury is willful and malicious under the Code only if the actor purposefully inflicted the injury or acted with substantial certainty that injury would result."). The fact that the two men had a fight on October 14, 1993, while they were on duty as correctional officers, and the fact that Mattson was injured as a result of the altercation are the only facts which are uncontested. However, the events leading up to the fisticuffs, specifically whether Mattson used a racial slur when referring to Hawkins, or whether there was any provocation, remain contested.[14] Given this contested fact and the meagerness of the record, the Court is unable to conclude whether Hawkins' acts squarely fall into the dischargeability exception of § 523(a)(6) of the Bankruptcy Code. Thus, this case must move along to trial, or a renewed motion might be brought after discovery and depositions of the parties.

## V. Seventh Amendment Right to Jury Trial

■ Subsequent to oral argument on December 21, 1998, an issue was raised by the parties as to whether they are afforded the Seventh Amendment right to jury trial in this dischargeability proceeding.[15] As ex-

---

14. Hawkins has failed to submit any sworn testimony to this Court. Thus, the Court could find that no issue of material fact has been asserted by competent proof. However, the Court refuses to take this course of action for two very good reasons. First, according to the general mandates of bankruptcy law, the dischargeability exceptions listed in Section 523(a) should be narrowly construed to give the debtor a "fresh start." *In re Miller,* 156 F.3d 598, 602 (5th Cir.1998). Thus, dischargeability should not be granted without affording the debtor an opportunity to present a record to the Court. Second, defense counsel, in his brief opposing the entry of summary judgment, has alerted the Court to a possible issue of material fact, Mattson's alleged use of a racial slur when referring to Hawkins.

Given these considerations, the Court finds it best at this juncture of the litigation, where no discovery has been taken, to permit the parties to develop the proper factual predicate upon which this Court can make a ruling.

15. The parties neither submitted briefs nor did they formally address this issue during oral argument on December 21, 1998. The question arose after the oral argument when David A. Gies, Esq., Mattson's attorney, and Martin J. Jennings, Jr., Esq., Hawkins' counsel, were in this Court's chambers discussing possible trial dates. The Court agreed to research this issue, and it now incorporates its findings in this opinion.

plained below, the Court finds that the right to a jury trial does not attach in this case due to the equitable nature of dischargeability proceedings.

The Seventh Amendment to the United States Constitution provides:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

The phrase "Suits at common law" has been interpreted to mean cases involving legal rights. *Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1245 (3d Cir.1994), *cert. denied*, 513 U.S. 999, 115 S.Ct. 508, 130 L.Ed.2d 416 (1994) (denying Chapter 11 debtors' request for trial by jury in bankruptcy court for a suit against their bankruptcy counsel for legal malpractice because debtors' claim was converted from a legal one to an equitable one). In *Granfinanciera, S.A. v. Nordberg*, the United States Supreme Court laid out a two-prong test to be used when determining whether a claim is equitable or legal in nature:

> First, we compare the statutory action to 18th–century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important than the first. If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder.

492 U.S. 33, 41, 42, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

The Seventh Circuit has explicitly dealt with the issue of whether the Seventh Amendment right to jury trial attaches to a Section 523(a)(6) dischargeability proceeding. *See In re Hallahan*, 936 F.2d 1496 (7th Cir. 1991). In *Hallahan*, debtor voluntarily filed for Chapter 7 bankruptcy, and in response creditor filed a complaint in the bankruptcy court alleging that debtor had acted willfully and maliciously when he breached the restrictive covenant of their employment contract. Claiming that the breach-of-contract action was legal in nature, debtor requested a jury trial. The bankruptcy court broadly held that "there is no right to a jury trial in the bankruptcy court in a dischargeability action." *Id.* at 1499.

On appeal, the circuit court began its analysis by noting that had the complaint been initially filed in district court rather than bankruptcy court debtor would clearly have a right to trial by jury under the Seventh Amendment. As such, the court framed the issue as "whether the suit ... sheds its legal character when heard as part of a dischargeability proceeding conducted by a bankruptcy court in the exercise of its traditional equitable jurisdiction." *See id.* at 1502. Quoting the Supreme Court, the panel instructed that:

> [I]n cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the bankruptcy proceedings, they become cases over which the bankruptcy court, which acts as a court of equity, exercises exclusive control. Thus a claim of debt or damages against the bankrupt is investigated by chancery methods.

*Id.* at 1503 (quoting *Katchen v. Landy*, 382 U.S. 323, 337, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) (quotations omitted)). Next, the Seventh Circuit applied the *Granfinanciera* test and determined that a dischargeability proceeding is a core proceeding under the Bankruptcy Code and as such is equitable in nature. *See id.* at 1505. The court reasoned that "[a] bankruptcy discharge and questions concerning the dischargeability of certain debts, involve issues with an equitable history and for which there was no entitlement to a jury trial in the courts of England prior to the merger of law and equity." *Id.* (quoting *In re Hooper*, 112 B.R. 1009, 1012 (9th Cir. BAP 1990)). Thus, given the equitable nature of the dischargeability proceeding, the

court held that debtor was not afforded the Seventh Amendment right to trial by jury. *See id.* The reasoning underlying the *Hallahan* decision has been accepted by a legion of other federal courts. *See, e.g., In re White,* 222 B.R. 831, 834–35 (Bankr.W.D.Tenn.1998) (holding that under the *Hallahan* progeny of cases parties are not afforded the right to jury trials in dischargeability proceedings); *In re Tanner,* Nos. 97B00073, 97A00517, 1997 WL 578746, at *4 (Bankr.N.D.Ill. Sept. 16, 1997) (holding that dischargeability proceedings are inherently equitable in nature, and as such parties are not entitled to jury trials); *In re Hutchins,* 211 B.R. 322, 324 (Bankr.E.D.Ark.1997) (citing numerous cases for the proposition that litigants to a dischargeability proceeding are not afforded the right to a jury trial); *In re Ward,* 184 B.R. 253, 256 (Bankr.D.S.C.1995) (applying the *Granfinanciera* test and holding that "a proceeding which addresses solely the issue of dischargeability as opposed to questions of liability or amount, would be equitable and therefore there would be no right to a jury trial."); *In re Fineberg,* 170 B.R. 276, 280–81 (E.D.Pa.1994) (stating that the Seventh Amendment right to trial by jury did not apply to the underlying bankruptcy proceeding); *Hooper,* 112 B.R. at 1011–13 (same).

The Third Circuit has not directly addressed the issue of whether parties to a 11 U.S.C.A. § 523(a)(6) dischargeability proceeding are afforded the Seventh Amendment right to jury trial. Given the absence of any law to the contrary, this Court will apply the reasoning of the *Granfinanciera* and *Hallahan* cases to the instant motion. Thus, the Court finds that the Seventh Amendment right to jury trial does not attach in this 11 U.S.C.A. § 523(a)(6) dischargeability proceeding. Here, the questions of Hawkins' liability and the amount of damages have already been determined by the New Jersey Superior Court, which entered a default judgment in favor of Mattson for $750,152.16. The only remaining issue in this proceeding is whether Hawkins' act of striking Mattson was willful and malicious under the non-dischargeability provisions of § 523(a)(6). As stated in *Hallahan,* this type of proceeding is clearly equitable in nature,

and as such the parties are not afforded the right to a jury trial.

**Conclusion**

Based upon the foregoing, Mattson's motion for summary judgment is denied.